WALLING, Adm'r of Wage and Hour Division, U. S. Department of Labor, v. PHILLIPS & BUTTORFF MFG. CO.

Civil Action No. 322.

District Court, M. D. Tennessee, Nashville Division.

Oct. 30, 1944.

Jeter S. Ray and Paul M. Cadra, Attys., Wage and Hour Division of U. S. Department of Labor, both of Nashville, Tenn., for plaintiff.

Cecil Sims and Judson Harwood, both of Nashville, Tenn., for defendant.

DAVIES, District Judge.

The cause was submitted upon the pleadings, evidence, exhibits, and argument of counsel for plaintiff and defendant, and, after due consideration thereof, the Court enters its findings of fact and conclusions of law as follows:

Findings of Fact

1. The defendant Phillips and Buttorff Manufacturing Company is a corporation organized under and existing by virtue of the laws of the State of Tennessee, having its principal office, manufacturing plants, shops, stores and warehouses in the City of Nashville, Davidson County, Tennessee, and being there engaged in the production, sale and distribution of stoves, stamped and sheet metal products, tinware and sundry other products. The complaint filed by the Administrator of the Wage and Hour Division of the United States Department of Labor on September 16, 1942, alleges failure to pay employees employed in or about defendant's sheet metal plant, located at 122 15th Avenue South, Nashville Tennessee, at a rate not less than one and one-half times their regular rate, contrary to Sections 7 and 15(a) (2) of the Fair Labor Standards Act, 29 U.S.C.A. §§ 207, 215(a) (2), and the sale, shipment, delivery and transportation of the goods produced by these employees directly and indirectly in interstate commerce, contrary to Section 15(a) (1) of the said Act; and the discharge or discrimination against six employees employed in connection with defendant's furnace and stoker department located at 12th and Hamilton Streets, Nashville, Tennessee, contrary to Section 15(a) (3) of the Act.

2. The defendant employed approximately fifteen employees in connection with its said sheet metal plant in manufacturing from galvanized and other metals a variety of sheet metal products such as screen dryers, ventilators, ammunition lockers, storage bins, filter pans and in processes and occupations necessary to the manufacturing of such articles. During the period since approximately March, 1942, to and including the dates of the trial of this cause, the said employees have been regularly engaged in and have devoted a substantial portion of each work-week to manufacturing the various items made from sheet metal and installing same as necessary appurtenances on a number of mine sweepers and submarine chasers that were being produced pursuant to contracts between the United States Government and the Nashville Bridge Company of Nashville, Tennessee, at whose instance the defendant produced and installed these items on said vessels. These mine sweepers and submarine chasers were constructed for use in the present war in which the United States is engaged. The vessels were constructed on the bank of the river and after the construction was complete

the vessels were launched in the river by means of skids and after being so launched in the river these war vessels went to New Orleans by traveling on the Cumberland River to the Ohio River, down the Ohio River to the Mississippi River and down the Mississippi to New Orleans.

None of the vessels in question were to be used for commercial purposes.

3. During the period alleged in the complaint, to-wit, October 24, 1940, to approximately December 15, 1943, defendant's employees in its sheet metal plant worked in excess of forty hours per week, during which time they were paid at straight time hourly rates and received no additional compensation in excess of forty hours per week until on or about July 15, 1943, at which time defendant began to pay these employees time and a half compensation for hours worked in excess of forty-eight hours per week.

While defendant claimed, and still asserts, that the employees working in the sheet metal plant who performed services in connection with installation on the mine sweepers and submarine chasers under the circumstances above set out were not engaged in commerce or in the production of goods for commerce and were otherwise exempt from the provisions of the Wage and Hour Law, the defendant nevertheless, beginning in December, 1943, commenced to pay these employees time and one-half for all hours worked in excess of forty hours per week and since said date has fully complied with the requirements of the law with respect to hours and wages.

4. The defendant is a highly reputable concern which has been engaged in business in Nashville for more than fifty years. Its officers are reputable citizens of the community. When the Act became effective the defendant immediately complied with all of the terms and provisions of the Act in all of its many departments with the exception of the tin shop and the furnace and stoker department, contending that these two departments were not covered by the provisions of the Act. After the defendant made this contention the defendant's business was inspected by two representatives of the Wage and Hour Department as early as September, 1940, or before that time. These two representatives discussed with the defendant's officials the operations of each of the departments and the application of the Wage and Hour law with respect thereto, and, while the testimony is somewhat indefinite, the proof shows that these two inspectors agreed with the defendant's contention that these two departments were not covered by the provisions of the Act. Although this inspection took place in 1940, this proceeding was not filed until two years thereafter. This fact alone justifies the conclusion that either the Wage and Hour Department agreed with the defendant's position, or, at best, were doubtful as to the application of the Act to these two departments, as otherwise they would have proceeded immediately. It is clear from the proof that the question of the application of the Act to these two departments was involved in grave doubt and that defendant at all times acted in good faith. It is significant also that plaintiff failed to offer the testimony of either of these inspectors. All of these matters are circumstances which the Court deems involved in the consideration of whether or not it should issue the extraordinary process of injunction.

The Court further finds from the proof that the six employees in defendant's furnace and stoker department, with respect to whom complaint is made, who were working in this department, were not discharged or in any other manner discriminated against by the defendant. The testimony of Cecil Allen to the effect that they were fired is categorically denied by Mr. Sawrie, who is corroborated by the other five employees. The Court was not impressed with Mr. Allen's testimony or his conduct, and finds he did not act in good faith about this matter, and the Court accepts the testimony of Mr. Sawrie and the other employees, from which it appears that these employees voluntarily quit their jobs while Mr. Sawrie took no steps other than to lay them off temporarily until Mr. Binns, the president of the defendant, returned to the city so that he could be consulted about the matter. Mr. Binns was expected back in the city within a few days and Mr. Sawrie's request to the employees that they wait until his return was entirely reasonable but was unacceptable to these six employees, all of whom, on the following Monday, requested and received severance certificates under the State Unemployment Compensation Law, Pub.Acts Tenn.1936, 1st Ex.Sess., c. 1. None of these employees

have since sought, nor do they now desire, to return to their employment with defendant.

### Conclusions of Law

1. The Court has jurisdiction of the parties hereto and of the subject matter of this action.

2. The Court does not at this time deem it necessary to determine the question of whether the employees of the sheet metal department engaged in the installation work on the submarine chasers and mine sweepers were engaged in the production of goods for interstate commerce, since the Court, in the exercise of its judicial discretion, under the facts found in this cause, would deny the extraordinary injunction relief sought by the plaintiff in this cause.

3. The Court finds that the defendant was not guilty of violating Section 15(a)(3) of the Act, since, under the proof, the defendant did not discharge or in any other manner discriminate against any of the employees in question.

Judgment will be entered accordingly.