WALLING, Administrator, Wage and Hour Division, United States Department of Labor, v. BARNESVILLE FARMERS ELEVATOR CO.

No. 268.

District Court, D. Minnesota, Sixth Division.

Jan. 13, 1945.

Douglas B. Maggs, Sol., and Archibald Cox, Associate Sol., both of Washington, D. C., and James M. Miller, Regional Atty., U. S. Department of Labor, of Minneapolis, Minn., for plaintiff.

Wilfrid E. Rumble and Pierce Butler (of Doherty, Rumble, Butler, Sullivan & Mitchell), both of St. Paul, Minn., and N. B. Hanson, of Barnesville, Minn., for defendant.

NORDBYE, District Judge.

Oscar Holt brought an action against this defendant seeking to enforce the payment of certain overtime wages growing out of his employment with the defendant company. Recovery was denied because it was held that the defendant was exempt from the Act by reason of the fact that it was engaged in the handling, storing, and processing of agricultural commodities within the meaning of the Act and the regulations promulgated by the Administrator. In view of such disposition, no finding was made as to whether or not the defendant was engaged in interstate commerce. Upon appeal, the Circuit Court of Appeals, following Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 64 S.Ct. 1215, remanded the matter to this Court to be held until the Administrator made a valid determination of the area of production. As yet, the Court's attention has not been called to any new regulation as to the area of production which may have been promulgated by the Administrator.

Holt began to work for this defendant on a full time basis in 1931. His duties consisted of waiting on the patrons of the elevator. He would accept grain, weigh it, determine its grade, clean and elevate it to the bins, and load it on to the cars. He also did heavy manual work, such as shoveling grain, sweeping out cars, and handling heavy sacks of grain and coal. In addition, he had access to the cash, drew checks from time to time, and when the manager was absent he was in charge of the elevator. Generally speaking, he may be characterized as a trusted employee. On or about November 18, 1942, Holt, together with one William Dahl, began an action against the defendant to recover overtime pay. Shortly before the com-

mencement of that action, and without the knowledge or consent ·of the defendant, Holt removed certain time cards from defendant's office covering his time and that of Mr. Dahl. These records were kept by these two men following instructions of the elevator manager, who deemed that such records were necessary in order to comply with the Wage and Hour regulations. Clearly, therefore, such time cards were a part of the company records. These records were turned over to the attorney for these two men by Mr. Holt, and were in the possession of the attorney from the Fall of 1942 until July, 1943, when they were introduced in evidence at the trial in support of the employees' claim. The trial closed on July 21, 1943. Holt arrived at his home at Barnesville on July 22nd. He did not report to work that day, and on July 23rd he went to Huron, South Dakota, to look for another job. This quest was apparently unsuccessful and he returned to Barnesville the same day. The 24th was on Saturday, and he was at home that day, but he made no contact with his employer until Monday, July 26th. It was on this date he was informed by his employer that his services were no longer needed. At no time between July 22nd and 26th did Holt report to his employer any reason for his absence, nor did he request permission from his employer to be absent. Defendant contends that he was discharged because of his dishonesty in removing the time records and for his unjustifiable absence from his duties as an employee from July 22nd to July 26th. The Administrator contends that such discharge was occasioned by, and directly due to, the institution of the suit referred to, and hence was unlawful and in violation of Section 15(a) (3) of the Act, 29 U.S.C.A. § 215(a) (3). This reads as follows:

"Sec. 15. (a) After the expiration of one hundred and twenty days from the date of enactment of this Act, it shall be unlawful for any person— * * *

"(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

There are two issues to be determined in this proceeding—one of fact and one of law. In that the fact issue must be decided adversely to the Administrator, it may be discussed first, and, in view of such disposition, it is not necessary to express any final view on the law question. The fact problem turns on the question whether the Administrator has sustained the burden of proof, that is, whether by clear and satisfactory proof the Administrator has established that this discharge was unlawful and that by reason thereof he is entitled to the mandatory injunction which he seeks.

Upon a consideration of all of the evidence, it may well be that the defendant was somewhat piqued because Holt and Dahl had instituted the suit for overtime wages under the Fair Labor Standards Act. The exemption provisions of the Act which the Court construed seemed to leave no reasonable doubt as to its applicability to the defendant's business. It is entirely probable, therefore, that the defendant considered that the claim of Holt and Dahl was without any merit and that it was unnecessarily subjected to the expense and inconvenience of a lawsuit. The officers of the defendant probably assumed that Holt failed to show any gratitude for their loyalty to him in keeping him as an employee for some fifteen years. But notwithstanding such attitude on the part of the defendant, if Holt by his conduct in other respects gave the defendant reasonable grounds for his discharge, there can be no basis for a mandatory injunction. Holt was a trusted employee. He had access to the cash and drew checks on defendant's accounts from time to time. It must be recognized that Holt had no right to take the time cards out of the office without the defendant's permission. Not only did he take his own cards, but also Dahl's. However one may characterize the offense which was committed, at least it was a covert scheme to obtain evidence and retain it so that it would not be available to the defendant. If these employees were entitled to the benefits of the Act, the time cards would be a most important item of evidence for both parties. They were retained by counsel for Holt and Dahl until they were produced in court many months after they had been abstracted from the office of the defendant. True, there is testimony by Holt that Kieselbach, the manager of defendant's elevator, asked him

about the cards some months after they disappeared, and, according to Holt, he, Kieselbach, expressed concern about the fact that they were taken out and inquired whether or not Holt could make arrangements to return them. According to Holt's testimony, he states that he informed Kieselbach that the cards could be returned. This conversation Kieselbach denies, but even though it did take place, Holt never did return the cards, notwithstanding the concern indicated by Kieselbach and his apparent worry over the criticism that might come to him in the event the officers of the defendant learned that the cards were missing. Under these circumstances, it was not unreasonable for defendant's directors to feel that they had lost confidence in Holt. As one of the directors expressed it, ·in response to the question as to why he voted to discharge Holt at the meeting of the board of directors when it was agreed that Holt should be discharged, "Well, what happened once might happen more," in referring to the taking of the records. Moreover, the fact that the board of directors consulted with their counsel regarding the rights of Holt to remain as an employee after he instituted the suit does not necessarily negative their good faith in discharging Holt. They had been informed by counsel that they could not discharge Holt merely because he instituted a suit against the company under the Act. But when it was discovered that Holt had secretly taken the records, defendant's counsel advised the board that, in their opinion, such conduct was cause for discharge. Then, when it appeared that Holt absented himself from his work from July 22nd until July 26th without cause or permission, they, the directors, were assured by counsel that there was no question as to the propriety of the discharge in light of the circumstances. While the directors of the defendant company may have welcomed the opportunity to discharge him, such attitude is immaterial if Holt had given them sufficient ground for such action. It is intimated that Holt assumed that he was going to be discharged after the trial and that occasioned his absence and attempt to obtain other employment. But the record will not sustain a finding that the defendant gave him any cause for such impression. Rumors emanating from outsiders cannot be attributed to the defendant. The fact remains that Holt's conduct in abstracting the time cards and remaining away from his work was his own doing. The defendant was neither a party to it nor responsible for it. By his own conduct of commission and omission, he gave the defendant, in its opinion, adequate cause for discharge. Testimony was given by the directors of the defendant that Holt's discharge was based solely on the grounds referred to. The Court would not be justified in finding that their testimony in this regard is not to be believed. If they determined in good faith that the conduct referred to caused them to lose confidence in Holt, their judgment on this record should not be set aside. It must follow, therefore, that the Administrator has failed to sustain the burden of proof that the discharge was unlawful.

■ Furthermore, there is another aspect of the fact situation which should stay the hand of a court of equity in respect to the relief requested. ·Holt met with an accident on July 5, 1943. He received compensation from the insurance company until March 24, 1944, on the basis of total disability. He is now employed by an elevator company at Thief River Falls, Minnesota. On account of the accident, which occurred on July 5, 1943, he cannot do any lifting, that is, heavy lifting. He cannot do any continued sweeping or handling of sacks of coal or grain. He is not able to shovel grain for any length of time if that work requires any heavy exertion. In short, according to his own testimony, he could not fulfill the major part of his duties which his job with defendant demands. Under his present employment at Thief River Falls, he is unable to do any heavy work and is not required to do so. It would be idle to issue a mandatory injunction and require the defendant to reinstate him when it is obvious that he cannot do the work of his former employment. Equity will not require one to do a futile thing. It would indeed be idle to require the defendant to do that which would be a mere gesture.

In view of the disposition of the controversy on the factual issues, it is not necessary for this Court to decide whether a showing of interstate commerce is necessary for the maintenance of an action by the Administrator to restrain violations of Section 15(a) (3).

A mandatory injunction will be denied. Findings of fact and conclusions of law in

harmony herewith may be presented by the defendant. An exception is allowed to the plaintiff.