W. Willard WIRTZ, Secretary of Labor,
United States Department of Labor,
Plaintiff,

v.

C. H. VALENTINE LUMBER COMPANY,
Inc., a Corporation, and Charles H.
Valentine, Defendant.

Civ. A. No. 7690.

United States District Court
E. D. South Carolina,
Charleston Division.

Dec. 11, 1964.

------◆------

Beverley R. Worrell, Charles Donahue, Reuben S. Haslam, George D. Palmer, U. S. Dept. of Labor, Birmingham, Alabama, for plaintiff.

I. A. Smoak, Jr., Walterboro, S. C., for defendant.

SIMONS, District Judge.

Plaintiff brings this action to enjoin defendants from violating the provisions of Section 15[a] [3] [1] of the Fair Labor Standards Act of 1938, as amended [29 U.S.C. § 201, et seq.], hereinafter referred to as the Act. Jurisdiction of the court is conferred by section 17 of the Act [29 U.S.C.A. § 217].

In the complaint filed on March 14, 1962, plaintiff alleges that the defendants did unlawfully discriminate against Raymond E. Smyly, James E. Valentine, and Ray Valentine, employees of the defendant Lumber Company, by discharging them from their employment because said employees exercised rights protected to them under Section 15[a] [3] of the Act. Plaintiff asks for judgment enjoining and restraining defendants from further violations of Section 15[a] [3] of the Act; requiring defendants to offer reinstatement to the discharged employees; and requiring defendants to pay the discharged employees wages lost to them by reason of the allegedly unlawful discharges.

In the Amended Answer dated March 30, 1962, the defendants denied the material allegations of the complaint; and for a second defense alleged that they did not unlawfully discriminate against the three subject employees, but that the employees, Ray Valentine and Raymond E. Smyly, were discharged for just cause, and the employee James E. Valentine left his employment voluntarily.

Thus the only questions before the court are: [1] whether the employees Ray Valentine, Raymond E. Smyly and James E. Valentine were unlawfully discharged in violation of Section 15[a] [3] of the Act; and [2] whether injunctive relief sought by plaintiff should be granted.

The case was tried before me without a jury, and in complaince with Rule 52[a] of the Federal Rules of Civil Procedure, I find the facts specially, and state my conclusions of law thereon, as follows:

## FINDINGS OF FACT

1. Prior to November, 1961, and subsequent thereto, the defendant corporation manufactured wood products which moved in interstate commerce and the defendant Charles H. Valentine was at all times president of the corporation, and actively managed, supervised and directed its business affairs and operations.

2. Raymond E. Smyly, Ray Valentine, and James E. Valentine were employees of the defendants in November, 1961, and were regularly and customarily engaged in manufacturing producing, handling and otherwise working on wood products which moved in interstate commerce.

3. On or about November 23, 1961, a representative of the United States Department of Labor, Wage and Hour Division, began an investigation of the defendant corporation on its own initiative to determine whether any violations of

---

1. Section 15 [a] [3] [29 U.S.C.A. § 215 [a] [3]] provides that it shall be unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee.

the Fair Labor Standards Act existed in the corporation's activities. Period covered by the investigation extended from November 23, 1959, to November 23, 1961.[2]

4. The investigation of defendants' business activities by the Department of Labor was not the result of any complaint, inquiry, or other action by any or all of the three subject employees.

5. Upon completion of the investigation, in January, 1962, the investigating officer found two separate violations. The first violation involved the exempt status of three employees from overtime wages. This discrepancy has been voluntarily resolved, and is not before the court.

The second determination was that approximately 102 employees of defendants, including the three subject employees, had been permitted to work 30 minutes a day for which they had not been paid wages. The thirty minutes were comprised of a fifteen minute "break" in the morning and a fifteen minute "break" in the afternoon. During these two breaks the employees were permitted to leave the work premises and attend to personal matters. The Department based its determination upon an interpretation of the Act by the Administrator, and concluded that rest periods of fifteen minutes duration must be counted as time worked. The investigating officer concluded that defendants' employees were entitled to $17,231.33 back wages as payment for these rest periods over the two years included in the investigation.

6. At the conclusion of the inspection defendants changed the duration of rest periods for their employees to conform with the recommendations of the investigating officer. However, they vigorously maintained they did not owe back wages for the 15 minute rest periods and refused to pay the same.

Following a conference with the Investigation Supervisor from Savannah, Georgia, on January 16, 1962, at which conference defendants still refused to pay the back wages, a letter was sent to defendants dated January 25, 1962, from the Regional Director of the Wage and Hour and Public Contracts Divisions of the Department of Labor in Birmingham, Alabama, outlining the legal courses of action available to the Department and to the employees to effect collection if payment were refused.[3]

7. Upon receipt of this letter, defendant Valentine voluntarily published its contents to a meeting of his employees on Tuesday, January 30, 1962. In concluding the meeting, he stated that he did not concur in the Department's findings, that he did not feel that he owed any money as wages for the "break" periods, and that the employees should determine for themselves what course they would follow.

8. Subsequently, an instrument described as a waiver of back wages was circulated among the employees by a co-employee. The majority of the employees including the subject three employees did not sign the waiver. It eventually became lost or misplaced. There is no evidence before the court indicating that pressure in any form was exerted by the defendants to force any employee to sign the waiver.

9. Prior to publication of the letter of January 25, 1962, management and employees of the Valentine Lumber Company manifested a harmonious and friendly relationship. There was no evidence of dissension or dissatisfaction among the employees. Following publication of the letter, unrest and confusion developed among the workers. Some employees left their machines and, at times, refused to return to work. There was a corresponding decrease in production. Ray Valentine, the first of the discharged employees, was a leader in the dissatisfaction and disturbances that were occurring throughout the plant. He was described as being a boisterous individual

2. The Fair Labor Standards Act of 1938, as amended, imposes a two year period of limitation. The investigation covered the period two years prior to its opening date.

3. See plaintiff's exhibit G–1.

who used profane language freely, and in general being a "trooper".

10. On Thursday, February 2, 1962, at the 10:00 a. m. "break" period, defendant Valentine heard employee Ray Valentine cursing him violently as Ray was leaving the "dry shed". Defendant Valentine discharged Ray Valentine immediately.

The two men had had an encounter sometime prior to the 10:00 break on this date. From the testimony at the trial, it is not clear exactly what words were passed between the two men at this time.[4]

11. On February 2, 1962, a short time after Ray Valentine was fired, employee James Edward Valentine expressed disapproval of the discharge of Ray to his superior Dubois. He was told that if the actions of management did not meet with his approval he could feel free to "get his time". He then requested to be discharged and was given his final pay check.

12. A week later Raymond E. Smyly was discharged for lack of work.[5]

13. Neither of the named employees, either prior or subsequent to their discharge, as shown by the record, filed or threatened to file a complaint under the Act, instituted any proceeding under the Act, testified or threatened to testify in any proceeding under the Act, nor was any demand ever made to the defendants by any one or all three of them for any back wages.

14. Employee Ray Valentine returned to work with the defendant corporation on March 15, 1962, and remained employed until May 19, 1964, at which time he voluntarily left defendants' employ to accept other work.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of the parties and of the subject matter of this action.

2. Since this is an equitable action, the court has authority to grant plaintiff all of the remedies prayed for in complaint,[6] if it should find that said discharges violated Section 15[a] [3] of the Act; and it is recognized that the Act must be given a liberal interpretation to accomplish its humanitarian purposes. Mitchell v. Robert DeMario Jewelry, Inc., 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 [1960].

3. It is indisputable from the evidence in this case that none of the discharged employees had ever taken any positive or overt action within the meaning of Section 15[a] [3] to recover any back wages allegedly owed to them by the defendants. It is likewise uncontroverted that none of the discharged employees ever made demand upon defendants for any back wages or ever implied in any manner that they were going to institute proceedings to collect the same. Neither is there any evidence before the court substantiating contention of plaintiff that defendants threatened to discharge any of its employees [including the 3 employees who are the subject of this action] who attempted to enforce collection of the alleged back wages due them by defendants. Even if the factual situation supported plaintiff's contention that defendants had threatened to discharge employees who attempted to collect the disputed back wages, plaintiff has not cited any authority to support the principle that such act constitutes a violation of Section 15[a] [3]; neither has the court found any such authority.

4. Defendant Valentine denied encountering employee Ray Valentine prior to the 10:00 break. Ray Valentine testified that at this encounter defendant Valentine asked him if he were for or against the company, and he replied, substantially, he was neither for nor against but would not sign something he did not understand. Two other witnesses testified they saw the two men together prior to the 10:00 break but could not hear what was said.

5. There was no evidence or testimony presented that convinced the court that Raymond E. Smyly was discharged for any reason other than lack of work due to seasonal fluctuation.

6. Reinstatement of employees; payment of back wages; injunction.

Although I find it unnecessary to pass upon this question, it would appear that Section 15[a] [3] of the Act was intended to protect those employees who have made a positive and overt act within the language of the statute, and that some positive action on the part of an employee is mandatory before there can be a violation of this section. Indeed, the only two cases cited by plaintiff to support his contention have so held, as discussed hereinafter.

4. To support his contentions, plaintiff cited Goldberg v. Zenger, 15 W. H. Cases 237 [D.C. Utah 1961] and Mitchell v. Equitable Beneficial Life, Health and Accident Co., 34 CCH Lab. Cas. 71, 428 [D.C. N.J. 1958], [copies of these opinions were furnished to the court by the plaintiff]. However, both of these cases can be readily distinguished from the subject case. In Zenger, supra, an employee was discharged because he insisted upon prompt payment of back wages due him under the Act, and the court held it should be considered therefore that the employee had filed a complaint and instituted a proceeding under or related to the Act. In Mitchell, supra, the discharged employee had given a statement to the Department of Labor Investigator during the course of his investigation of defendant's business.

In these two cases it is quite clear that the employees were discharged by their employers because they had taken positive and overt actions, which the court found were protected by Section 15[a] [3] of the Act.

In the other cases cited by plaintiff, the employees were directly involved in law suits for wages.[7]

5. Discharge of an employee for sufficient disciplinary cause is not a violation of the provisions of Section 15[a] [3] of the Act.[8]

6. The immediate cause of discharge of Raymond Valentine was not his assertion of any statutory right, the exercise of which is protected from reprisals. The court concludes that this employee was discharged justifiably for disciplinary reasons.

7. The immediate cause of the termination of the employment of James E. Valentine was not his assertion of any statutory right, the exercise of which is protected from reprisals. The court finds that this employee was not discharged by defendants, but that he voluntarily terminated his employment.

8. The immediate cause of the discharge of Raymond E. Smyly was not his assertion of any statutory right, the exercise of which is protected from reprisals. The court concludes that this employee was discharged because of lack of sufficient work to justify his continued employment.

9. Since the investigation by the Department of Labor which was completed in January, 1962, the defendants have been in compliance with the applicable provisions of the Fair Labor Standards Act. The question of payment for the two 15 minute "breaks", which defendants had given their employees without pay prior to subject investigation, appears to be a litigable issue, which surely could not be construed under the circumstances as a wilful or bad faith violation of the Act.

The court unhesitatingly concludes that any indicated violations of the Act were immediately corrected when called to their attention by plaintiff's representatives. The evidence is clear that they are now, and since the conclusion of plaintiff's investigation, have been in complete compliance with the Act. The court entertains no doubt as to defendants' good faith and bona fides in their

---

7. See Goldberg v. Bama Mfg. Corp., 302 F.2d 152, 93 A.L.R.2d 603 [5th Cir.]; Mitchell v. Dyess, 180 F.Supp. 852 [D.C. S.D.Ala.]; Mitchell v. Goodyear Tire & Rubber Co., 278 F.2d 562 [8th Cir.].

8. Walling v. Phillips & Buttorff Mfg. Co., 57 F.Supp. 543 [D.C.Tenn.]; Walling v. Barnesville Farmers Elevator Co., 58 F. Supp. 821 [D.C.Minn.].

continued compliance therewith. It is, therefore,

Ordered that plaintiff's complaint be dismissed; that his prayer for injunctive relief be and it hereby is refused; and that his demand for the reinstatement of defendants' former employees, Ray Valentine, James E. Valentine and Raymond E. Smyly, and the payment of their back wages as demanded in the complaint be, and the same are hereby denied.

It is so ordered.