James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

GOODYEAR TIRE AND RUBBER COMPANY, Appellee.

No. 16268.

United States Court of Appeals Eighth Circuit.

May 23, 1960.

Bessie Margolin, Asst. Sol., Dept. of Labor, Washington, D. C., for appellant.

Charles R. Garner, Fort Smith, Ark., for appellee.

Before GARDNER, WOODROUGH and BLACKMUN, Circuit Judges.

WOODROUGH, Circuit Judge.

The Secretary of Labor filed a complaint in the District Court for the Western District of Arkansas praying an injunction against the defendant, the Goodyear Tire and Rubber Company, from violating § 15(a)(3) of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a)(3), for reinstatement in its employment of one M. C. Cole, and for the payment of wages of M. C. Cole lost to him by reason of his unlawful discharge. The District Court declined to grant the relief and dismissed the action. The Secretary of Labor appeals.

This action is brought under § 15(a)(3) of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a) (3), which provides:

"(a) * * * It shall be unlawful for any person * * *

"(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted * * * any proceeding under or related to this Act * * *

One M. C. Cole was an employee of the defendant at its retail and service store in Fort Smith, Arkansas. The parties stipulated, and the trial court found, that the defendant in its regular business received merchandise in substantial quantity from without the State of Arkansas and delivered substantial quantities of its merchandise to customers located outside the state.

Cole commenced his employment with defendant sometime in 1951 and had been employed continuously by it until his discharge in June of 1958, except for a two year period of military service. Cole's duties were those of a tire service man: he fixed flats, mounted tires, saw to the inspection and service of a fleet of trucks whose owner had a service contract with defendant; he likewise ran errands, loaded and unloaded merchandise, and helped keep the premises clean.

Cole was of the opinion that he had worked overtime in December of 1957 and again in June of 1958 for which he had not been paid. With this in mind, he attempted to contact the wage and hour division of the Department of Labor to rectify his situation. On being told that that division did not maintain an office in Fort Smith, he wrote to the nearest office. The letter was dated June 23, 1958, and was signed by Cole and another, who subsequently denied its authorship. The letter said:

"We are writing you this letter for your help, and for you to look into this matter immediately, sir. We work for the Goodyear Tire and Rubber Company, Fort Smith, Arkansas. Our names are Leonard L. Embry and M. C. Cole. The store

manager asked us to work overtime. Promised to pay us but won't. So we are sending you a copy of last week's time we did not get paid for. We work nearly every week overtime but don't get paid. · This has been going on for sometime. The month of December, 1957, we had 55 hours each.

"We be looking for an answer real soon.

"Yours truly,
"/s/ M. C. Cole,
"Leonard Embry.

"P.S. These time sheets have been approved by the service manager, McCain."

On the next day that the store manager was in the store, June 25, Cole was called into the office, quizzed about the letter, and discharged.

The central issue at the trial, then, was this: did the defendant employer discharge or discriminate against Cole because he had filed a complaint against his employer.

The government produced the testimony of Cole and Cole's immediate supervisor, one McCain. Cole testified that he had been employed in the same capacity for some six or seven years, except for the time that he was in the military service. He stated that he considered himself a good employee, that he had worked, but had not been paid for, the overtime for which he made the complaint to the Department of Labor. He stated in this connection that he had made out his time card showing the overtime but that it had been returned to him by the store manager for signature with the overtime portion crossed out. He testified that when he went to see the manager about the non-payment the store manager told him "he didn't see where he could pay the overtime that we put in." He said that on June 25, the first day after he had written the letter that the manager was in the store, he had been called into the manager's office and asked if he had written or called the Wage and Hour Di-

vision. He acknowledged that he had. To a question as to why he had written he responded that he wanted to find out why he had not been paid for the overtime that he had worked. He said that the manager, Grantham, then asked his supervisor, McCain, if he thought that Cole had the overtime coming. When McCain answered in the affirmative, Grantham said, "If that is the way you feel about Goodyear, we won't have any further use for you." With this he was fired.

McCain, Cole's supervisor, testified that Cole was an able and comparatively diligent worker, that he had in fact worked the overtime to which he made claim, and that the interview resulting in Cole's discharge transpired substantially as related by Cole.

Grantham, the store manager, testified for the defendant that Cole was an entirely unsatisfactory employee; his job deficiencies ran the gamut of tardiness, neglectful work, misuse of equipment and tools, and the burden of bill collector calls. He stated that Cole was scheduled for discharge before the incident of the complaint to the Wage and Hour Division. His version of the interview during which Cole was fired is as follows:

"The morning I fired M. C., I didn't know exactly whether or not he had talked to the Wage-Hour people or not. I had heard it rumored. I asked M. C. point blank if he had done so and if I recall my exact words on that, I told M. C., 'Now, that is not going to keep your job here. I have done made up my mind to let you go and if you think that is going to keep you on the payroll' —The conversation went something on those lines. I felt like I couldn't let M. C. hold that over my head. If he was able to get away with it, there was no reason why we wouldn't have seven or eight other employees in the store that might have done so also."

On cross examination, in response to a question asking if it was his scheduled

plan to fire Cole at 9:30 on the morning he did, Grantham replied:

"No, sir. Actually, the climax came when I found out that Cole had talked to the Wage-Hour people. Somehow the rumor got around in the store that I was going to remove Cole. At that time I told Cole, I said, 'M. C., if you believe that the Wage-Hour people are going to guarantee you a job here, you are wrong.' I will pin-point it like this: it would have happened within three or four days. * * *"

The other employee who signed the letter, and who was not, at least at the time of trial, discharged, was Leonard Embry. He testified on rebuttal in part as follows:

"Q. * * * did Mr. Grantham talk to you about whether you had written a letter to the Wage-Hour Division? A. Yes, sir.

"Q. What did he ask you, Leonard? A. He asked me did I have anything to do with it.

"Q. What did you tell him? A. I told him I didn't.

"Q. What did he say? A. He said if I did I could leave then."

■ The resolution of conflicting testimony is of course the obligation of the trial Court, and it is not within the competence of this Court to overturn that resolution unless it is clearly erroneous. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.; Aetna Life Insurance Co. v. Kepler, 8 Cir., 116 F.2d 1.

■ The trial Court found that "the testimony does not disclose that his [Cole's] discharge in any way related to the letter * * * and that he was not in anywise discriminated against nor did his discharge occur because of the letter." [170 F.Supp. 189, 193.]

■ We hold that this finding was clearly erroneous. Disregarding in its entirety the testimony of Cole, McCain, and Embry, the testimony of defendant's store manager, Grantham, reveals that he called Cole into his office specifically to ask if he had complained to the Wage-Hour authorities, and his directness of purpose was unequivocal. "The morning I fired M. C., I did not know exactly whether or not he had talked to the Wage-Hour people or not. I had heard it rumored. I asked M. C. point blank if he had done so * * *." Moreover, Grantham admitted he had not intended to discharge Cole on that day for any other reason and there is no testimony whatever in the record that his conversation at that time included any discussion of what were claimed at the trial to be Cole's shortcomings, nor did Grantham, at the time of firing Cole, ascribe any such reasons for his discharge. Plainly, all that had occurred was that Grantham had just learned of Cole's complaint to the Wage & Hour authorities. Whether this fact alone motivated Grantham at that time or whether it was, as defendant's counsel suggested, the straw that broke the camel's back, the unavoidable inference is that Grantham's action was prompted by knowledge of Cole's complaint. Since these facts unambiguously and admittedly show that Cole would not have been discharged at that particular time but for his admission of authorship of the letter of complaint, this evidence, per se, established a violation of the plain terms of § 15(a)(3), which makes it unlawful "to discharge or in any other manner discriminate against an employee because such employee has filed any complaint."

■ The judgment must therefore be reversed and the case remanded. As to the appropriate remedy, we note that in Mitchell v. Robert De Mario Jewelry, 361 U.S. 288, 80 S.Ct. 332, 337, 4 L.Ed.2d 323 (decided January 18, 1960) the Supreme Court reversed the decision of the Court of Appeals for the Fifth Circuit 260 F.2d 929 in an action by the Secretary of Labor, brought as this action was, under § 17 of the Fair Labor Standards Act of 1938 as amended, 29 U.S.C.A. § 217. The Court of Appeals had held that the District Court lacked jurisdiction to order reimbursement of lost wages resulting from an unlawful discharge of an

employee. The Supreme Court held "that, in an action by the Secretary to restrain violations of § 15(a) (3) a District Court has jurisdiction to order an employer to reimburse employees, unlawfully discharged or otherwise discriminated against, for wages lost because of that discharge or discrimination." Although the Supreme Court also declared that "because * * * of what we have found to be the statutory purposes there is doubtless little room for the exercise of discretion not to order reimbursement" it remanded the case for consideration of that aspect.

Reversed and remanded with direction to grant judgment in favor of the plaintiff not in conflict with 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323.