Arthur J. GOLDBERG, Secretary of Labor, United States Department of Labor, Appellant,

v.

BAMA MANUFACTURING CORPORATION and Lowell D. Cotney, Appellees.

No. 19168.

United States Court of Appeals Fifth Circuit.

April 27, 1962.

Jacob I. Karro, Morton Liftin, Attys., Dept. of Labor, Charles Donahue, Sol. of Labor, Isabelle Cappello, Atty., Dept. of Labor, Washington, D. C., Beverley R. Worrell, Regional Atty., for appellant.

Robert M. Collins, Martin, Vogtle, Balch & Bingham, Birmingham, Ala., for appellees.

Before HUTCHESON, WISDOM and BELL, Circuit Judges.

WISDOM, Circuit Judge.

This appeal turns on the extent of the trial judge's discretion, in the light of Mitchell v. Robert De Mario Jewelry, 1960, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed. 2d 323, to order or to withhold reinstatement and reimbursement of an employee discriminatorily discharged.

The Bama Manufacturing Corporation produces women's blouses at Daviston, Alabama. It employs about ninety persons in its business. August 20, 1960, Mrs. Lessie May Powell, an employee, reported wage and hour violations to an official of the Alabama Department of Industrial Relations. Later, she filed a complaint with the Wage and Hour Division of the Department of Labor. Shortly afterwards, she was discharged. After an investigation, the Department of Labor instituted suit, alleging that the discharge violated the Fair Labor Standards Act, 29 U.S.C.A. § 215(a) (3) and seeking an order requiring Bama Manufacturing to reinstate Mrs. Powell with back pay. The trial judge found that the discharge was improper, the Company having discharged her because she filed a complaint. At the same time, the trial judge concluded that Lessie May Powell "probably ought to have been fired for half a dozen reasons prior to her discharge", and he refused to order either reinstatement of the employee or reimbursement of lost pay. We think that the trial judge abused his discretion in not ordering reimbursement. We remand the case for further proceedings.

The Secretary of Labor requests both reinstatement and reimbursement. He relies on testimony showing the discharge to have occurred as a reprisal to Mrs. Powell's complaint about the wage and hour violations. Lowell D. Cotney, the president and half-owner of the corporation and an individual defendant in the

suit, testified that he learned of the complaint two days after it was made, on Monday, August 22. He then held a meeting of the employees at which he stated that he thought he knew who had called the employment office and he wanted that person to resign. Cotney had heard from indirect sources that Mrs. Powell had made the complaint. When she did not resign and reported to work the next day, he again threatened the employees by saying that the employee who had made the "false statements" must resign. August 25 he discharged Mrs. Powell.

The facts relating to the discharge are not seriously disputed. Bama Manufacturing brought out strong evidence, however, showing that Lessie May Powell was not a satisfactory employee. Her floor supervisor testified that she had forged the supervisor's name on production slips. He said, too, that she caused confusion among the employees near her by "cursing and loud talking and machine trouble." A fellow worker testified that Mrs. Powell complained so much that it slowed down her work. Another confirmed that she had forged production slips. Two of the employees testified that they had seen Mrs. Powell tinker with the time clock. On one occasion she threw a spool of thread at the clock and knocked off one of the hands. The most serious charge, which both Cotney and one of the employees testified to, was that Mrs. Powell had stolen blouses from the plant. One of the plaintiff's witnesses said on cross-examination that Mrs. Powell had declared that since she was not being paid enough "she was taking hers out in shirts." Cotney testified that on numerous occasions he talked with Mrs. Powell in an effort to improve her conduct and that these things were in his mind when he discharged her. The testimony of other witnesses indicates that Cotney was not informed of several of Mrs. Powell's actions until after her discharge.

The trial court made the following findings:

"5. The evidence is clear and convincing that the defendants discharged Lessie May Powell because of her aforesaid complaint or institution of a proceeding.

"6. The plaintiff is entitled to the injunction prohibiting further violations of Section 15(a) (3) of the Act by the corporate defendant and Lowell D. Cotney. The ends of justice require that this Court, sitting as a Court of Equity, give some consideration to the fact that Lessie Mae Powell probably ought to have been fired for half a dozen reasons prior to her discharge. Accordingly, the Court will not make any back pay award nor require defendants to make her an offer of reinstatement."

There is no doubt in our minds that the record fully supports the district court's finding that there were half a dozen reasons why Mrs. Powell should have been discharged. Nevertheless, the fact remains that the immediate cause of her discharge was the assertion of a statutory right, the exercise of which is protected from reprisals.

Section 215(a) (3) of the Act declares that it shall be unlawful for any person "to discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." Section 217 provides that the federal district courts shall have jurisdiction "to restrain violations of section 215 of this title: Provided, That no court shall have jurisdiction, in any action brought by the Secretary of Labor to restrain such violations, to order the payment to employees of unpaid minimum wages or unpaid overtime compensation or an additional equal amount as liquidated damages in such action."

A recent Supreme Court decision dominates the law on the remedies available to an employee discharged in viola-

tion of Section 215(a) (3).[1] Mitchell v. Robert De Mario Jewelry, 1960, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323. The facts of De Mario are analogous to those of the case at bar, with the significant exception that there was little or no evidence that the De Mario employees were unsatisfactory workers. The district court found that the three De Mario employees were discriminatorily discharged in violation of Section 215(a) (3) and ordered their *reinstatement*. It then referred to the proviso in Section 217 prohibiting the award of unpaid minimum wages, overtime compensation, or liquidated damages in an action brought by the Secretary of Labor and stated that this proviso raised a question as to whether the court had jurisdiction to order reimbursement of back wages. The district court did not reach this jurisdictional question because it decided, in the exercise of its judicial discretion, not to order such relief. This Court affirmed, on the reasoning that the Section 217 proviso deprived the district court of jurisdiction to award damages. The Supreme Court reversed, holding that the

lower court had jurisdiction to order reinstatement with reimbursement. The thrust of its decision emphasizes the breadth of remedy available to a district court in such a case and the necessity for adequate relief to a wronged employee in order to promote the purposes of the Fair Labor Standards Act.[2]

The portion of the opinion bearing most forcefully on this case is the concluding paragraph: "The Court Appeals did not reach the question whether the District Court abused its discretion in declining to order reimbursement. *While, because of what we have found to be the statutory purposes there is doubtless little room for the exercise of discretion not to order reimbursement, since we do not have the entire record before us we shall remand the case to the Court of Appeals for consideration of that issue.*" 361 U.S. at 296, 80 S.Ct. at 337. (Emphasis added).

The lesson we draw from the De Mario case is that the district judge's discretion is sharply curtailed, but not erased. That case dealt only with reimbursement of lost wages because the dis-

1. In the only Court of Appeals decision, Mitchell v. Goodyear Tire & Rubber Company, 8 Cir., 1960, 278 F.2d 562, the Eighth Circuit held that an employee had been discriminatorily discharged and remanded for judgment not in conflict with the De Mario decision. In Mitchell v. Stewart Brothers Construction Company, D.C.Neb., 1960, 184 F.Supp. 886, 902, the court awarded damages to an employee discriminatorily discharged. And in Mitchell v. Dyess, S.D.Ala., 1960, 180 F.Supp. 852, the court stated that it would be unwise to order reinstatement and instead awarded damages for the lost wages while the discharged employee was unemployed following the discharge.

2. The Supreme Court stressed the fact that Congress did not attempt to establish detailed federal inspection of payrolls to secure compliance with the Act but instead chose to rely entirely on complaints and information received from aggrieved employees. "Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances. * * * For it needs no argument to show that fear of economic retaliation might often operate

to induce aggrieved employees quietly to accept substandard conditions. * * * In this context, the significance of reimbursement of lost wages becomes apparent. To an employee considering an attempt to secure his just wage deserts under the Act, the value of such an effort may pale when set against the prospect of discharge and the total loss of wages for the indeterminate period necessary to seek and obtain reinstatement." 361 U.S. at 292–293, 80 S.Ct. at 335. The Court found "no indication in the language of the § 217 proviso, or in the legislative history, that Congress intended the proviso * * * to apply to reimbursement of *lost wages* incident to a wrongful discharge, as distinguished from the recoupment of *underpayments* of the statutorily prescribed rates for those while still employed. * * * In effectuating the policies of the Act the proper reach of equity power in suits by the Secretary under the wage provisions of the statute, and that in suits under the discharge provisions, are attended by quite different considerations, which, in passing the 1949 amendments, Congress evidently had in mind." 361 U.S. at 294–295, 80 S.Ct. at 337.

trict court had ordered reinstatement, but the same principles apply to both remedies. Had the Supreme Court concluded that the relief was mandatory it would not have remanded the case for the Court of Appeals to consider whether the trial court's discretion had been abused. The appeal to the equitable powers of the court assumes that the trial judge has a measure of discretion. It is severely limited when an employee is improperly discharged. Unless compelling reasons point to the contrary, the full measure of relief should be granted to the discharged employee. Still, there is some room for a trial judge, in the exercise of sound judicial discretion, to order something less than full measure of relief.

Generally, in order to carry out the purposes of Section 215(a) (3) by freeing employees of the fear of economic retaliation, the discharged employee should be restored, as nearly as possible, to the same situation he would have occupied if he had not been discharged. Generally, this requires both reinstatement and reimbursement. But, although it is impossible for us to imagine cases when a denial of both reinstatement and reimbursement would be justified (once a court has concluded that an employee was discharged in violation of the Act), we cannot say that in every case it is an abuse of discretion not to reinstate as well as reimburse an employee. There is no national policy requiring an employer to reinstate and continue to employ an incompetent or dishonest employee.

This case is not based on the credibility of witnesses and the sufficiency of the evidence. This is not a case where the employer was hard put to dig up minor irregularities. On the record, it is evident that Mrs. Powell was an incompetent, dishonest employee. We refer to her tinkering with the time clock, forging production slips, and stealing blouses.

In the circumstances of this case, where Bama continued to employ Mrs. Powell notwithstanding her unsatisfactory conduct, the employer should, we think, reimburse the employee discrimnatorily discharged. But an employer should not have to keep a bad apple in the barrel.

This case presents a collision of two strong policies, one against condoning violations of the Act and the other against forcing an employer to keep unfit employees. The latter policy is satisfied by the denial of the plea for reinstatement. What of the former? The purposes of the Fair Labor Standards Act require that employees throughout the country feel confident that they may bring a complaint to the Department of Labor without being penalized by their employers. The appellees argue that this objective is met here since anyone familiar with the case will know that the only reason Mrs. Powell was denied relief was her lack of merit. There is something to this, but not enough. The conspicuous feature of the district court decision which must impress employees is that Bama discharged an employee in violation of the Act and the district court allowed the employer to get away with it scot free. Many employees may not appreciate the extent of Mrs. Powell's misconduct. At least to some degree, therefore, the feeling of confidence in the assertion of statutory rights, so vital to the Act's enforcement, may be shaken. We think that the trial judge exceeded the bounds of sound judicial discretion in denying both reinstatement and reimbursement.

As we see it, the conflicting policies present in this case would be better balanced by a compromise judgment than by one granting a complete victory for either side. We suggest, therefore, that an appropriate judgment would be one requiring reimbursement of lost wages without reinstatement. Such an award might also include damages in lieu of reinstatement. It is of course for the trial judge, exercising his discretion, to decide what measure of damages is appropriate in view of the facts of the case. A damage award would tend to promote the purpose of the Act by reassuring employees that their right to seek statutory

relief will be protected. Though a bare award of money damages is not expressly authorized by the Act, the Supreme Court's opinion in De Mario is potent authority for the court to grant such relief.[3]

The judgment is vacated and the case remanded for further proceedings consistent with this opinion.

GRIFFIN B. BELL, Circuit Judge (dissenting).

I dissent, not from the rationale of what the majority holds on the present findings, but because of what I consider to be inadequate findings with regard to the reason for discharge of the employee involved.

The employee reported to the Alabama Department of Industrial Relations and to the wage and hour division of the United States Department of Labor that the employer was backing up or jamming the time clock in order to get additional work out of the employees without additional pay. This charge, although there is no finding to this effect, was apparently false, as the employer contended it to be, for after investigation by the Department of Labor the only charge filed was for discharging this one employee.

The evidence in this matter is such as to require remand of the case for a finding as to whether or not the employer carried the burden of showing that the charge of the employee was false, wholly unwarranted, and maliciously made. My view is that the *sine qua non* of § 15(a) (3) of the Act is a complaint for which there is reasonable basis as distinguished from a false complaint, wholly unwarranted and maliciously made. Should this finding be in the affirmative, the trial court should then make a further finding as to whether or not the discharge was because of such false complaint. We would then be in position to determine, not the propriety of the injunction for the employer did not appeal from the entry of it, but the merits of the appeal seeking reinstatement and back pay.

I am unwilling to render final judgment where the probability of the charge by the employee having been false, wholly unwarranted, and maliciously made is so inherent in the record, and yet so ignored in the findings because I do not believe that Congress intended by the proscription of the statute to reach any such factual situation, if it does indeed exist. The teaching of De Mario, supra, does not indicate otherwise. The charge on the other hand, if not false, would indicate a gross violation of the rights of this employee and my final judgment on appeal as to the relief sought would be decidedly governed accordingly. We should retain jurisdiction pending clarification of these questions by additional findings on the present record. Cross v. Pasley, 8 Cir., 1959, 267 F.2d 824, 827.

3. In declaring that the district court could grant an award reimbursing the discharged employee for his lost wages, the Supreme Court in De Mario quoted its statement in Porter v. Warner Holding Co., 328 U.S. 395, 66 S.Ct. 1086, 90 L.Ed. 1332: "Unless otherwise provided by statute, all the inherent equitable powers of the District Court are available for the proper and complete exercise of that jurisdiction. And since the public interest is involved in a proceeding of this nature, those equitable powers assume an even broader and more flexible character than when only a private controversy is at stake. * * * [T]he court may go beyond the matters immediately underlying its equitable jurisdiction * * * and give whatever other relief may be necessary under the circumstances." 361 U.S. 288, 80 S.Ct. 332, 335. The mere fact that the court did not also grant an order of reinstatement would not reduce its authority to issue an award of damages. Mitchell v. Dyess, S.D.Ala., 1960, 180 F.Supp. 852.