**J. Wayne KNEISLEY, Plaintiff,**

v.

**HERCULES INCORPORATED, a corporation of the State of Delaware, Defendant.**

**Civ. A. No. 79–310 MMS.**

United States District Court, D. Delaware.

Dec. 30, 1983.

---

Judith N. Renzulli, and Robert Aulgur, Jr., Wilson, Whittington & Auglur, Wilmington, Del., for plaintiff.

Thomas Reed Hunt, Jr., and Donald E. Reid, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendant.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

This is a civil action brought by a former employee of Hercules, Inc. under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.* (1976).[1] The parties raised five issues at a pretrial conference. These are: (1) whether plaintiff may proceed under a theory that he was victimized by a discriminatory reduction-in-force plan; (2) whether plaintiff must prove at trial that he was replaced by a younger employee; (3) whether testimony of similarly situated employees is admissible to prove age discrimination against plaintiff; (4) whether plaintiff can be equi-

---

1. ADEA prohibits discrimination against any individual between the ages of 40 and 70 "with respect to his compensation, terms, conditions or privileges of employment, because of such individual's age." 29 U.S.C. § 621(b); *see also* 29 U.S.C. § 631(a) Four exceptions to ADEA's proscription against age discrimination are: (1) "where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business," 29 U.S.C. § 623(f)(1); (2) "where the differentiation is based on reasonable factors other than age," *id.*; (3) "to observe the terms of a bona fide seniority system or any bona fide employee benefit plan.... which is not a subterfuge ...," *id.*, § 623(f)(2); and (4) "to discharge or otherwise discipline an individual for good cause." *Id.*, § 623(f)(3).

tably barred from recovery of damages because of misconduct during his term of employment; and (5) what definition of "willful" should apply for purposes of ADEA's liquidated damages provision and statute of limitations. Each issue will be discussed in turn.

## I. *The Viability of Plaintiff's Theory— Reduction-in-Force Under ADEA*

Plaintiff J. Wayne Kneisley contends in his lawsuit that Hercules unlawfully attempted to force him to accept early retirement. Under the guise of a purportedly "voluntary" early retirement program, Kneisley alleges, Hercules forced Kneisley into retirement pursuant to an involuntary and discriminatory reduction-in-force scheme. Plaintiff asserts, in particular, that he and eleven other Hercules workers employed in the company's Organics Department received an ultimatum that they either accept retirement under a special early retirement plan or face demotion, reduction in pay, and diminished chances of career advancement. In his own case, Kneisley states, the Organics Department General Manager, Robert Leahy, threatened to cut Kneisley's salary and downgrade his job if he did not accept early retirement.

Kneisley does not contend that programs aimed at eliminating surplus or inefficient employees violate ADEA. He does contend, however, that if a program is aimed solely at older employees who are members of ADEA's protected class, then the program is unlawfully discriminatory. Because, plaintiff argues, Hercules singled out pension eligible workers who were all between the ages of 40 and 70, Hercules' reduction-in-force violated ADEA.

■ Defendant cannot dispute, and has not attempted to dispute, that ADEA prohibits a reduction-in-force that is intentionally targeted against older employees. *See e.g., Coburn v. Pan American World Airlines,* 711 F.2d 339 (D.C.Cir.), *cert. denied,* ___ U.S. ___, 104 S.Ct. 488, 78 L.Ed.2d 683 (1983); *Massarsky v. General Motors Corp.,* 706 F.2d 111 (3d Cir.), *cert. denied,*

___ U.S. ___, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983); *Rose v. National Cash Register Corp.,* 703 F.2d 225 (6th Cir.), *cert. denied,* ___ U.S. ___, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983); *Hedrick v. Hercules, Inc.,* 658 F.2d 1088 (5th Cir.1981); *Williams v. General Motors Corp.,* 656 F.2d 120 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). Hercules disagrees, however, that Kneisley was affected by a reduction-in-force program. It contends that plaintiff's demotion was an individualized decision which was justifiable because of Kneisley's poor job performance. That Hercules happened to be offering a special early retirement program, and that Kneisley was advised of the program's availability at the same time as he was informed about his demotion, defendant argues, does not transform its handling of Kneisley's employment status into a case of illegal age discrimination.

■ Hercules' tactical trial position does not undercut plaintiff's right to advance his case. Plaintiff has chosen to pursue a theory linking Hercules' reduction-in-force with its early retirement program. Supporting plaintiff's theory is an inference which can be drawn from a May 16, 1977, memorandum from Mr. S.H. Hellekson to Hercules' general managers and directors of auxiliary departments. Hellekson instructed these administrators that in reducing "surplus personnel," an employee who is eligible for early retirement and "whose position or services you have determined to be unessential" should be offered a "special allowance in addition to his pension" as "an alternative to downgrading the employee." (Doc. 84, Exhibit C).

It is up to plaintiff to prove at trial his theory that a reduction-in-force was targeted against older employees. Hercules will have every opportunity to disprove that theory. For present purposes, however, Hercules' denial that its reduction-in-force was connected to action taken against Kneisley is irrelevant. Resolution of competing theories is left for trial.

## II. *Allocation of Proof.*

The parties have briefed the more narrow question of what Kneisley's specific burden of proof should be at trial. Defendant contends that Kneisley must prove in his prima facie case that he was replaced by a younger person, while Kneisley argues that such proof need not be presented in a reduction-in-force case.

■ In assigning the plaintiff's burden of proof in ADEA cases the federal courts have borrowed from employment discrimination cases arising under Title VII. *See Smithers v. Bailar,* 629 F.2d 892, 894 (3d Cir.1980); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1010 (1st Cir.1979); *Rodriguez v. Taylor,* 569 F.2d 1231, 1239 (3d Cir.1977), *cert. denied,* 436 U.S. 913, 98 S.Ct. 2254, 56 L.Ed.2d 414 (1978); *Grant v. Gannett, Inc.,* 538 F.Supp. at 686, 688 (D.Del.1982). Where a plaintiff brings a disparate treatment case under ADEA or Title VII, he bears the ultimate burden of proving intentional discrimination by a preponderance of the evidence. *Massarsky v. General Motors Corp.,* 706 F.2d at 117.

■ This discriminatory motive need not be proved by direct evidence. The Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), held that the plaintiff may introduce such circumstantial evidence as to create a presumption of intentional discrimination. *Id.* at 802, 93 S.Ct. at 1824. At least in a refusal to hire case, the Supreme Court explained, a plaintiff can make out a prima facie case by proving by a preponderance of the evidence (1) that he was a member of the protected class; (2) that he applied for a job opening for which he was qualified; (3) that he was rejected despite his qualifications, and (4) that the position remained open and the employer continued to seek applicants with similar qualifications. *Id.* Once a plaintiff makes a prima facie showing of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *Id.* at 807, 93 S.Ct. at 1826. The employer must "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 257, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1980). If the defendant meets its burden of rebuttal, the plaintiff must then prove that the defendant's "asserted reason was merely a pretext for unlawful discrimination." *Massarsky,* 706 F.2d at 118.

Defendant, relying on *McDonnell Douglas,* contends that to meet his prima facie showing plaintiff must prove that he was replaced by a younger employee. Applying the *McDonnell Douglas* four-part formula, defendant explains that Kneisley must prove by a preponderance of the evidence that he (1) was a member of the protected class, (2) was qualified for his job, (3) was nonetheless fired and (4) was replaced by an employee outside of the protected class.

■ The *McDonnell Douglas* test, however, is not inflexible. It is not meant to be applied in a "rigid, mechanized or ritualistic" fashion. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). As the Supreme Court has explained, the precise nature of a plaintiff's showing will vary with the circumstances of each case. *McDonnell Douglas,* 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13.

Recognizing the flexibility of the *McDonnell Douglas* formula, the federal courts have all agreed that in cases alleging a discriminatory reduction-in-force, a variation of that formula must apply. *See e.g. Coburn v. Pan American World Airways,* 711 F.2d at 343; *Massarsky v. General Motors Corp.,* 706 F.2d at 118 n. 13; *McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir.1980). The Third Circuit Court of Appeals articulated its own modified formula for reduction-in-force cases in *Massarsky v. General Motors Corp.,* 706 F.2d 111. "Because Massarsky's complaint concerned a reduction in force," the Court explained, "it obviously was unnecessary for him to follow the literal terms of the *McDonnell Douglas* model

and show that he was actually replaced by a younger employee." 706 F.2d at 118 n. 13. A plaintiff alleging a discriminatory lay off, the Court stated, can "easily" make out a prima facie case by showing "only that he is a member of the protected class and that he was laid off from a job for which he was qualified while others not in the protected class were treated more favorably." *Id.* at 118.

■ Defendant attempts to dodge *Massarsky* by again characterizing plaintiff as a victim of an individualized demotion rather than a reduction-in-force. As stated above, however, this argument goes to trial strategy, not burden of proof. So long as plaintiff pursues his theory of the case as involving a discriminatory layoff, he need not introduce evidence of replacement by a younger employee. If the evidence at trial convinces the jury that Hercules demoted plaintiff as a result of a lawful, individualized, independent decision that was unrelated to any general plan for reduction-in-force, then defendant will be entitled to judgment in its favor.

## III. *Similarly Situated Employees*

■ Kneisley seeks to introduce the testimony of four former co-workers from Hercules' Organics Department. These employees, Kneisley contends, were among the twelve Organics workers subjected to defendant's discriminatory reduction-in-force plan. This evidence, Kneisley explains, will corroborate his theory that Hercules targeted nonessential pension eligible employees in the Organics Department for demotion and/or involuntary early retirement. Testimony by these similarly situated employees, Kneisley states, will also serve as rebuttal to Hercules' explanation that it fired him for legitimate reasons.

Hercules objects on relevancy grounds and on grounds of prejudice.

### A. *Relevancy*

Hercules contends that the four employees were not similarly situated and that their testimony will not tend to prove a practice or pattern of age discrimination.

Defendant explains that two of the proposed witnesses, John Biegner and Paul F. Ritchie, did not accept early retirement and that Mr. Biegner actually retained his same position at Hercules. A third witness, Homer Haggard, had received regular merit pay raises and unlike plaintiff, Hercules states, performed his job satisfactorily. Hercules explains that with regard to the remaining witness, Dr. John Autenreith, Kneisley failed to describe any employment history establishing similarities with Kneisley's performance at Hercules.

Plaintiff replies that the experience of these four employees is very relevant to Hercules' alleged program of forced early retirement and to the manner in which it was executed in the Organics Department. Plaintiff contends that defendant's arguments simply evade the thrust of his theory of the case by focussing on the particulars of Kneisley's retirement.

The Court agrees with plaintiff. All of Kneisley's four witnesses, according to his representations, were pension eligible and were, on the same day as plaintiff, subjected to "economic and psychological pressures" to force them to accept early retirement. Messrs. Biegner and Ritchie, plaintiff asserts, in fact did originally choose to retire and only later reversed their decisions after defendant "modified the coercive pressures" with respect to those two employees. The testimony of all four witnesses, insofar as it related to their treatment around the time that plaintiff received his ultimatum, could tend to support plaintiff's theory of the case. *See Harpring v. Continental Oil Co.,* 628 F.2d 406, 409 (5th Cir.1980), *cert. denied,* 454 U.S. 819, 102 S.Ct. 100, 70 L.Ed.2d 90 (1981); *Schulz v. Hickok Manufacturing Co.,* 358 F.Supp. 1208, 1212 (N.D.Ga.1973); *cf. Moorhouse v. Boeing Co.,* 501 F.Supp. 390, 394 n. 6 (E.D.Pa.), *aff'd mem.,* 639 F.2d 774 (3d Cir.1980).

■ At most, Hercules argues, this testimony is only relevant to Kneisley's rebuttal case to prove that Hercules' justification was pretextual. Although Hercules is

correct that the proposed testimony is relevant to rebuttal, it is also relevant to plaintiff's theory that Hercules conducted a reduction-in-force linked to the early retirement program. Even were it not relevant to the prima facie cases, *McDonnell Douglas'* burden shifting is not set in so rigid a mold that it precludes a plaintiff from anticipating a defendant's justification by introducing evidence of pretext in his case-in-chief. *See Worthy v. United States Steel Corp.*, 616 F.2d 698, 701 (3d Cir.1980); *Miller v. General Electric Co.*, 562 F.Supp. at 617 n. 1.

### B. *Rule 403*

Hercules asserts that even if relevant, the testimony of the four Organics Department employees should be excluded under Rule 403. Hercules assesses the Rule 403 factors as follows. The testimony is unfairly prejudicial because the jury "will be swayed against Hercules, not because of any alleged discriminatory conduct, but rather because it put its own economic well-being before that of these five long-term employees." (Doc. 91 at 34). In addition, because the evidence will be cumulative and repetitious, a jury might tend to believe it has merit simply because it is repeated. (*Id.*) The testimony will confuse the issues in the case because it will emphasize the moral qualities of Hercules' economic motives whereas there is nothing illegal about a motive of "reducing payroll expenses." (*Id.*) The jury will be mislead because of an appeal to its emotions. (*Id.* at 35). For all of these reasons, the testimony will result in undue delay and will waste time. (*Id.*) Furthermore, all of the facts contained in the witness' testimony can be obtained through testimony of Kneisley's supervisor, Robert Leahy, or through less inflammatory statistical evidence. (*Id.*)

Hercules relies principally on *Moorhouse v. Boeing Co.*, 501 F.Supp. 390 (E.D.Pa.), *aff'd mem.*, 639 F.2d 774 (3d Cir.1980). Judge Hannum of the Eastern District of Pennsylvania excluded the testimony of five co-employees in that ADEA case on the ground that the evidence's probative value of showing a pattern or practice of discrimination was outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time and needless presentation of cumulative evidence. *Id.* at 393–94. The five co-employees all were pursuing their own separate discrimination lawsuits. Judge Hannum had previously denied a request for consolidation on similar grounds of confusion and unfair prejudice. Consolidation was denied, the court explained, because "despite some similarity among the cases, there were ... substantial enough factual distinctions surrounding each plaintiff's layoff which made it impractical to try all the cases to the same jury." *Id.* at 392. In particular, different defendants were named in each case and three of the plaintiffs were fired during different time periods. *Id.*

The plaintiff in *Moorhouse* had argued that the testimony of co-employees was relevant to Boeing's alleged prior practice of transferring employees to other projects before resorting to layoffs and that the witnesses would testify about Boeing's layoffs of "many" older employees. Judge Hannum, however, relied on the reasoning underlying his consolidation ruling. "[H]aving the plaintiff/witnesses recount the isolated actions taken against them individually would be of limited probative value to show the existence of a pattern of practice ..., and given the complex trial circumstances of these six cases," the court ruled, "the evidence was properly excluded under Rule 403." *Id.* at 394.

Kneisley's case is distinguishable from *Moorhouse*. Kneisley does not allege a vague and general company-wide practice and pattern of discrimination. Rather, he alleges that Hercules carried out a program specific to the Organics Department, evidenced by a more general corporate memorandum, that targeted twelve employees for adverse treatment because of their age. The testimony of the other Department employees is thus highly probative of plaintiff's theory. The burden created by the added time required to hear

this testimony will not be so great as to substantially outweigh its probative value. Nor will the testimony confuse or mislead the jury so long as plaintiff limits his examination to areas relevant to the alleged reduction-in-force scheme carried out in the Organics Department. Moreover, it is hard to see how there is sufficient danger of unfair prejudice to substantially outweigh the testimony's probative value. If Hercules, in fact, carried out the alleged plan, then the evidence surely will be prejudicial, but not unfairly so. Hercules will have every opportunity to prove at trial that the alleged reduction-in-force was not targeted at older employees in the Organics Department and to prove to the jury that the treatment of the co-employees had nothing to do with Mr. Kneisley's predicament.

Hercules argues that introduction of the co-employees' testimony will waste judicial time by opening up rebuttal testimony about the merits of each witness's employment treatment. Additional time will be consumed, Hercules argues, by allowing the introduction of testimony by the other seven "targeted employees" from the Organics Department as well as the three hundred other Hercules employees who opted for the special early retirement program.

The Court agrees with Hercules that it should be allowed to rebut Kneisley's evidence regarding the alleged discriminatory reduction-in-force in the Organics Department by introducing testimony of any of the twelve targeted employees. Such testimony will be highly probative and will not be outweighed by any of the Rule 403 factors. The Court does not agree, however, that testimony of employees outside of this alleged targeted group would be admissible solely because the Court allowed four Organics Department employees to take the witness stand. The fact that Hercules employees outside of the

Organics Department accepted early retirement without coercion is irrelevant to Kneisley's theory of the case. None of these three hundred employees will be able to rebut the testimony by the Organics Department witnesses because they will have no first hand knowledge of Hercules' practices in that department. Thus, Hercules' concern about over-expansion of its rebuttal evidence does not change the Court's balance of the Rule 403 factors.

This does not mean Hercules' rebuttal case is confined to a straitjacket. There are many strategems it can follow. For example, in addition to testimony by the twelve targeted employees, Hercules may attempt to rebut Kneisley's theory by introducing statistical evidence or testimony of company officials that Kneisley was demoted and/or forcibly retired as part of a company wide, non-discriminatory plan to weed out surplus or inefficient employees of every age. It may also introduce evidence, by statistics or testimony of officers, that its early retirement program was offered to all pension eligible employees, independent of any plan to improve company efficiency. Alternatively, Hercules' rebuttal may rest on a theory that the company had no general plan to eliminate inefficient employees and that Kneisley was demoted or retired simply because the company was dissatisfied with his performance.

## IV. *Plaintiff's Bad Conduct as Bar to Recovery*

Hercules asserts that Kneisley should be equitably barred from recovery because he engaged in theft and deception while employed at Hercules. Hercules proposes to introduce at trial evidence proving "that over the course of several years of his employment, plaintiff falsified travel and expense reports and misapplied Hercules funds for his uses." (Doc. 88 at 2).[2] Her-

**2.** Other theories of admissibility were raised at oral argument, but the estoppel issue was the only issue briefed.

Defendant does not contend that the evidence is admissible as a justification for plaintiff's discharge because, defendant admits, it did not

know about the false records at the time of its adverse employment decision in 1977. (Doc. 94 at 38–48). Hercules does contend, however, that on the issue of credibility it may introduce evidence that Kneisley lied at his deposition about his Chilean records. The Court reserves

cules concedes that it was largely unaware of this alleged misconduct until after Kneisley already left its employ. Hercules relies principally on Kneisley's apparent admission in his deposition that while on two trips to South America he falsified expense vouchers to indicate that he was in Peru while he really was in Chile. (Doc. 32 at 138–141, 146–54).[3] Plaintiff explains that he did so only to conceal from his wife his involvement in a South American amour. The actual expenses, Kneisley says, were legitimate.

A court's remedial powers in age discrimination suits are set forth in 29 U.S.C. § 626(b). That section provides that courts may enforce ADEA "in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act, in particular 29 U.S.C. § 211(b), 216 and 219. *See Lorillard v. Pons,* 434 U.S. 575, 580–82, 98 S.Ct. 866, 870–71, 55 L.Ed.2d 40 (1978). In addition, section 626 provides that:

> the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability deemed to be unpaid minimum wages or unpaid overtime compensation under this section.

*Id.* section 626(b). "Unpaid minimum wages or unpaid overtime compensation" are defined as "amounts owing to a person as a result of a violation" of ADEA. *Id.* Thus, section 626 specifically contemplates back pay awards.

Hercules relies on a line of cases decided under the National Labor Relations Act in which courts have denied reinstatement with back pay to employees due to the employees' prior misconduct and/or false testimony. *See, e.g. NLRB v. Magnusen,* 523 F.2d 643, 645 (9th Cir.1975); *NLRB v. Breitling,* 378 F.2d 663, 664–65 (10th Cir. 1967); *NLRB v. Coca-Cola Bottling Co.,* 333 F.2d 181, 185 (7th Cir.1964).

■ I do not believe those cases arising under the NLRA are applicable in the context of a back pay award under ADEA. Unlike the National Relations Act, the principal focus of ADEA is not to achieve industrial peace or facilitate workers' relationships with their employers. ADEA, instead, focuses on an individual's right to receive non-discriminatory treatment at the work place and has, as its goal, the elimination of age discrimination in places of employment. *Cf. Washam v. J.C. Penney Co., Inc.,* 519 F.Supp. 554, 558 (D.Del.1981). Defendant's estoppel argument must, therefore, be evaluated under the separate statutory goals of ADEA.

■ There can be no doubt that a district court has considerable discretion in shaping a remedy for age discrimination. Its remedy, however, must be consistent with the "central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Ablemarle Paper Co. v. Moody,* 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). The Third Circuit Court of Appeals recently reaffirmed, in a Title VII case, that the purpose of back pay

---

judgment on this issue. Hercules should ask for a side bar at trial if it intends to introduce this evidence for impeachment purposes.

Hercules also argues that this evidence is admissible because it shows that Hercules was entitled to downgrade Kneisley in 1974, 1975 and 1976. This, Hercules asserts, affects Kneisley's damage calculations, which are based on his grade and salary in 1977. Defendant asserts this evidence will serve to confirm that Hercules downgraded Kneisley for inadequate performance because it shows that while in Chile, Kneisley was not doing what he was supposed to be doing. (Doc. 94 at 54–58). Plaintiff conceded at argument, however, that Kneisley was demot-

ed to a Grade 12 position by 1977 allegedly without knowledge of Kneisley and without a reduction in pay. Given the concession by plaintiff it would seem that evidence of the misconduct unknown to Hercules is irrelevant. On the other hand, dependent upon the trial strategy of plaintiff, the contested evidence might be admissible.

3. Defendant contends that, in addition to the two admitted falsified records, "[t]he evidence at trial may develop additional instances of falsification of travel and expense and possibly other business reports." (Doc. 92 at 5 n. *).

awards is not only to compensate victims of discrimination but is also to accomplish the goals of the statute. *Craig v. Y & Y Snacks, Inc.*, 721 F.2d 77 at 83 & n. 2 (1983). "[T]he two key objectives of Title VII's back pay provision," the *Craig* court explained, "... have been described by the Supreme Court as *primarily* to end employment discrimination and *secondarily* to compensate injured victims in a make whole fashion." *Id.* at 84. Identical objectives underlie ADEA's back pay remedy. *See Rodriguez v. Taylor*, 569 F.2d at 1237–1238.

▮▮▮▮▮ To bar assessment of a back pay award against Hercules because of several alleged instances of falsified travel reports, unknown in large part at the time of Hercules' alleged discriminatory action, would hinder, rather than further, the goals of ADEA. First, it would eliminate the anti-discrimination objectives of ADEA's back pay provision. Second, because an equitable bar to recovery would go beyond mere reduction in recovery for dollar losses to Hercules, it would frustrate the compensation objectives of ADEA. "Victims of discrimination," the Third Circuit has explained, "are entitled to be restored to the position they would have occupied but for the intervening unlawful conduct of employers." *Rodriguez*, 569 F.2d at 1238. Misconduct or no misconduct, if Kneisley's allegations are correct, he would have continued in his position at Hercules "but for" Hercules' illegal actions and, hence, is entitled to "restoration" of the back pay he would have received. Were plaintiff seeking reinstatement,[4] his ability to function effectively with his employer, as reflected by prior misconduct, might indeed preclude a reinstatement order. *See Dickerson v. Deluxe Check Printers, Inc.*, 703 F.2d 276, 281 (8th Cir. 1983); *Combes v. Griffin Television, Inc.*, 421 F.Supp. 841, 846–47 (W.D.Okl.1976). But considerations of employer-employee compatibility are irrelevant to a back pay award.

Significantly, Hercules has cited no cases under either the FLSA or ADEA where a court has barred recovery of back pay on the basis of an employee's general misconduct. This case is unlike *Williams v. Boorstin*, 451 F.Supp. 1117 (D.D.C.1978), *rev'd on other grounds*, 663 F.2d 109 (D.C. Cir.1980), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981), where the court denied reinstatement with back pay to an employee who falsely represented his credentials in his application for employment.[5] There an award of back pay to the employee would have, much more directly than in Kneisley's case, "reward[ed] him for his own misconduct." *Id.* at 1127. Kneisley's alleged misconduct may have violated company procedures and may even have cost Hercules some money, but it did not result in Kneisley's obtaining a position at Hercules that he was not otherwise qualified to hold.

An analogous case arising under the FLSA is *Goldberg v. Bama Manufacturing Co.*, 302 F.2d 152 (5th Cir.1962). There the trial judge had found that Bama improperly discharged an employee in retaliation for her filing a complaint for wage and hour violations. The trial judge declined to order reinstatement with back pay because of considerable evidence of serious misconduct, including tinkering with a time clock, forging production slips and stealing blouses. The Fifth Circuit Court of Appeals reversed for abuse of discretion. While agreeing that reinstatement should be denied because it would wrongly force the employer "to keep a bad apple in the barrel," *id.* at 156, it held that back pay should be awarded so as "to promote the purpose of the Act by reassuring employees that their right to seek statutory relief will be protected." *Id.* at 156–57.

---

4. Kneisley concedes that a request for reinstatement is time barred.

5. The District of Columbia Circuit Court of Appeals reversed on grounds that no violation of the Title VII had been proved. *Williams v. Boorstin*, 663 F.2d 109, 119 (D.C.Cir.1980), *cert. denied*, 451 U.S. 985, 101 S.Ct. 2319, 68 L.Ed.2d 842 (1981).

In the instant case, where the alleged misconduct appears less serious than that found to exist in *Bama Manufacturing,* denial of a back pay award would similarly be inappropriate. Were plaintiff seeking reinstatement, the Court might agree that Kneisley's alleged misconduct was relevant to his remedy. The Court does not believe, however, that it is relevant to the availability of a back pay award.

## V. *Willfulness*

The parties have briefed the issue of what facts plaintiff must prove 1) to recover liquidated damages and 2) to invoke ADEA's extended three year statute of limitation. Both issues hinge on a definition of the term "willful."

First, section 216(b) of the FLSA, incorporated into ADEA by 29 U.S.C. § 626(b), provides for the recovery of liquidated damages equal in size to the amount of a back pay award. 29 U.S.C. § 216(b). ADEA, however, limits this award of liquidated damages to "cases of willful violation." 29 U.S.C. § 626(b). Second, ADEA's statute of limitations, 29 U.S.C. § 626(e), incorporates the statute of limitations provision of section 6(a) of the Portal-to-Portal Act, 29 U.S.C. § 255. This section provides a two year limitation, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

Both Hercules and Kneisley apparently agree that a plaintiff in the Third Circuit need not prove that an employer specifically intended to violate ADEA.[6] Hercules argues, however, that the employee must prove that his employer (1) intentionally discriminated on the basis of age and (2) knew or reasonably should have known that its conduct violated ADEA. Kneisley disagrees. He asserts that an employer acts willfully if he acts intentionally *or* in reckless disregard of the consequences, and that an employer need not have knowledge of the implications of ADEA.

---

6. *See Wehr v. Burroughs Corp.,* 619 F.2d 276, 283 (3d Cir.1980). Courts in other circuits have required a showing of specific intent. *See Loeb*

## A. *Liquidated Damages*

There is much disagreement among the various federal circuits as to the meaning of the term "willful" in the ADEA's liquidated damages provision, ranging from a requirement that a plaintiff prove "specific intent" (*i.e.,* that the employer intended to violate the law) to a requirement that the plaintiff show the employer had reason to know that he was governed by ADEA. *See generally Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1190–91 (6th Cir. 1983); *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161, 1165 & n. 24 (S.D.N.Y. 1983); H. Elgit, 2 Age Discrimination § 18.14 (1983).

The Third Circuit Court of Appeals, in *Wehr v. Burroughs Corp.,* 619 F.2d 276, was among the first courts to address the question. The court explained that the term "willful" has never had a precise or uniform definition. Recognizing that Congress incorporated into ADEA the one year extension to the Portal-to-Portal Act's statute of limitations for willful violations of the FLSA, the Court concluded that the same definition of willfulness should apply to the liquidated damages provision of ADEA. Willful applies, the Court explained, "to violations which are intentional, knowing or voluntary as distinguished from accidental and it is used to characterize conduct marked by careless disregard whether or not one has the right to act. *United States v. Illinois Cent. R. Co.,* 303 U.S. 239, 243 [58 S.Ct. 533, 535, 82 L.Ed. 773]...." *Id.* at 283, *quoting Hodgson v. Hyatt,* 318 F.Supp. 390 (N.D.Fla.1970). The *Wehr* court further explained that

... Congress did not intend to restrict the meaning of "willful" ... to intentional violations of the ADEA. It is sufficient to prove that the company discharged the employee because of age and that the discharge was voluntary and not accidental, mistaken or inadvertent. In our view, it would also be sufficient to prove that the discharge was

---

*v. Textron,* 600 F.2d 1003, 1020 n. 27 (1st Cir. 1979); *Koyen v. Consolidated Edison Co.,* 560 F.Supp. 1161, 1165 (S.D.N.Y.1983).

precipitated in reckless disregard of consequences.

*Id.* at 283.

Hercules argues that the *Wehr* court's inclusion of a "recklessness" standard was dictum because the court upheld a jury charge that placed an even higher burden on the victorious plaintiff. Hercules further proposes that were the Third Circuit to squarely face the issue, it would follow the Seventh Circuit case of *Syvock v. Milwaukee Boiler Manufacturing Co.*, 665 F.2d 149 (7th Cir.1981), reject recklessness as a basis for liquidated damages, and require an additional element of proof that the employer knew or reasonably should have known that its conduct violated ADEA.

▬▬▬ This Court is not convinced that it has sufficient reason to reject the strong language, even if dicta, contained in *Wehr*. The Seventh Circuit appellate court in *Syvock* revealed no new analysis that would compel a modification of *Wehr*. The *Syvock* court reasoned that to allow liquidated damages for "willful" violations without proof of the defendant's state of mind would lead to automatic doubling of damages in all disparate treatment cases. 665 F.2d at 155. This, the court reasoned, is not supported in the legislative history of ADEA. Some showing of the defendant's knowledge of illegality, the court stated, must be made. The Third Circuit panel certainly must have been aware of these obvious implications of its decision when it authored *Wehr*. Although *Syvock's* reasoning is internally sound and has been followed by other courts, *see Blackwell v. Sun Electric Corp.*, 696 F.2d at 1183–84, this Court is unable to state that the Third Circuit Court of Appeals would revise its well considered statements in *Wehr*. Furthermore, the recklessness element of *Wehr* has been embraced, at least in dicta, by other courts. *See Goodman v. Hueblein*, 645 F.2d 127, 131 (2d Cir.1981); *but see Koyen v. Consolidated Edison Co.*, 560

F.Supp. at 1165.[7]  Likewise, the *Wehr* court's failure to require proof of knowledge of ADEA's implications has since been adopted elsewhere. *See Kelly v. American Standard, Inc.*, 640 F.2d 974, 979–81 (9th Cir.1981).

### B.  *Statute of Limitations*

The question arises again, under section 255(a) of the Portal-to-Portal Act, whether knowledge of the implications of ADEA must be proved to establish a "willful" violation. One reading of *Wehr* is that the Third Circuit appellate court has already rejected this requirement. The *Wehr* court stated that its definition of willfulness under ADEA's liquidated damage provision was identical to the statute of limitations' definition in section 255(a). The *Wehr* court did not, however, extensively discuss the case law under section 255, and its holding was limited to ADEA's liquidated damages provision.

Most other circuits have required a showing under section 255(a) that the employer at least knew that the governing statute was "in the picture." *See e.g. Donovan v. Sabine Irrigation Co.*, 695 F.2d 190, 196 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 3537, 77 L.Ed.2d 1387 (1983) (question is did employer know or have reason to know conduct was governed by statute; neither employer's good faith nor ignorance of governing statutes or regulations precludes finding of willfulness); *Marshall v. Erin Food Services, Inc.*, 672 F.2d 229, 231 (1st Cir.1982) (conduct willful if employer knew or had reason to know the FLSA applied to its employment practices); *EEOC v. Home Insurance Co.*, 553 F.Supp. 704, 714 (S.D.N.Y.1982) (actions willful where defendant aware his actions are governed by ADEA); *Donovan v. Kentwood Development Co.*, 549 F.Supp. 480, 489 (D.Md.1982) (extended limitations period applies if employer knows or has reason to know that his employees are subject to FLSA). Indeed, plaintiff apparently

---

7. The recklessness standard is arguably irrelevant to this case. Where a jury finds in a disparate treatment case that a decision was made because of the employee's age, it necessarily finds that the employer acted intentionally.

*Goodman v. Heublein, Inc.*, 645 F.2d 127, 131 n. 6 (2d Cir.1981). The Court nonetheless will follow the Third Circuit Court of Appeals' formulation which includes recklessness.

is willing to accept for purposes of this case that the Court apply that standard. (*See* Doc. 93 at 29–30).

It is very possible that the Third Circuit would recognize an additional element—that of knowledge of ADEA's implications—in ADEA's statute of limitations even though it does not recognize that element in ADEA's liquidated damages provision. The Ninth Circuit, in *Kelly v. American Standard, Inc.,* 640 F.2d 974, specifically embraced the notion of adding an extra element to the proof of willfulness under section 255(a). The *Kelly* court, in substantially adopting *Wehr's* definition of willfulness under ADEA's liquidated damages provision,[8] refused to include a requirement that the employer know of ADEA's implications. The court agreed that courts generally require such an element under section 255(a) of the Portal-to-Portal Act, but *distinguished* that statute of limitations provision as being "designed to prevent an employer with knowledge of the FLSA from delaying an employee's lawsuit." *Id.* at 979 n. 6. The liquidated damage provision of ADEA, in contrast, is "in effect a substitution for punitive damages and is intended to deter intentional violations of the ADEA." *Id.* at 979. Courts applying the latter provision, explained the *Kelly* court, therefore need look only at the knowing or voluntary nature of the violation, not the employer's knowledge of the Act. *Id.*

■ This Court does not know whether the appellate court's statement in *Wehr* represents its final word on section 255(a). It might reject the *Kelly* court's analysis and apply a uniform "willfulness" definition. But since plaintiff is willing to accept the burden of proving that Hercules knew ADEA was "in the picture," and was "aware that its conduct was governed by that statute" (Doc. 92 at 29–30), the Court sees no reason not to apply that standard in this case.

## VI. *Conclusion*

This case will proceed to trial. Kneisley, as a part of his prima facie case, will have to prove that he was a member of the protected class, was qualified for the job from which he was demoted or constructively discharged, and that members not in the protected class were treated more favorably. To prove the existence of a discriminatory reduction-in-force in the Organics Department, Kneisley may introduce testimony of other Department employees who were allegedly victims of the same coercion as was Kneisley. Kneisley's alleged misconduct will not act as an equitable bar to his recovery of damages. Kneisley will be entitled to liquidated damages if he proves that Hercules voluntarily, knowingly, intentionally, or with reckless disregard for the consequences, and not accidentally, mistakenly or inadvertently, discriminated against him because of his age. The three year statute of limitations will apply if, in addition, Hercules knew or should have known that its actions were governed by ADEA.

An appropriate order will issue.

---

**8.** The court declined to adopt *Wehr's* reckless-ness dictum. *See* 640 F.2d at 980 n. 7.