923 F.2d 839
 Unpublished Disposition
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Carlos MORI-NORIEGA, Plaintiff, Appellee,
v.
ANTONIO'S RESTAURANT, INC., et al., Defendants, Appellants.
 No. 90-1170.
 United States Court of Appeals, First Circuit.
 Nov. 1, 1990.
 
 Appeal from the United States District Court for the District of Puerto Rico; Raymond L. Acosta, District Judge.
 Luis Limeres, with whom Jose R. Otero and Otero Suro & Otero Suro were on brief, for appellant, Antonio's Restaurant, Inc.
 Manuel Correa Marquez, with whom Correa, Calzada, Collazo, Salazar & Herrero was on brief, for appellant, Restaurant Reina de Espana, Inc.
 Jose Antonio Pagan Nieves, with whom Jose E. Andino Delgado was on brief, for appellee.
 D.P.R.
 AFFIRMED.
 Before BREYER, Chief Judge, VAN GRAAFEILAND,* Senior Circuit Judge, and SELYA, Circuit Judge.
 BREYER, Chief Judge.
 
 
 1
 The district court found, on the basis of a bench trial, that two restaurants (Antonio's and Reina de Espana) had each discharged the plaintiff from his job as a waiter because he had cooperated with the Department of Labor in its investigation of Antonio's violation of wage and hour laws. The court found damages of about $33,000, which it then doubled as the law allows. See 29 U.S.C. Sec. 216(b) (providing for damages plus an equal amount for "liquidated damages"). The defendants appeal from the judgment against them. We find their arguments without legal merit.
 
 
 2
 First, the defendants claim that the evidence does not support the district court's finding that the defendants dismissed the plaintiff for an "impermissible" (i.e., retaliatory) reason. They do not deny, however, 1) that the plaintiff worked for Antonio's from July, 1986, to August 12, 1987, 2) that the plaintiff cooperated in the Labor Department's investigation of Antonio's practices, 3) that the Labor Department assessed penalties against Antonio's for having unlawfully failed to pay employees for overtime, 4) that plaintiff left his job at Antonio's on August 12, 1987, 5) that one week later Reina de Espana hired plaintiff as a waiter, and 6) that Reina de Espana dismissed him one week after hiring him.
 
 
 3
 In addition, plaintiff testified that just before Reina de Espana dismissed him, the manager called him aside and told him the following:
 
 
 4
 [L]ook, Mori, I have some bad news for you.... [M]anagement ha[s] received a telephone call from the last job that you had, Antonio's, in which it was said that [you are] a dangerous person and that they had problems with you. And that they ... lost thousands of dollars due to your fault and for that reason management [does]n't want to have anything to do with you and told me to dismiss you at once.
 
 
 5
 2 Record 35-36. Reina's manager conceded that he had called Antonio's for references at about this time. Antonio's owner conceded he had discussed the plaintiff during the course of such a conversation. A fact finder, believing the plaintiff, could reasonably interpret this conversation as referring to a dismissal from both restaurants for retaliatory reasons. The conceded facts, together with the reported conversation and the corroboration, permit an inference of retaliatory dismissals from both restaurants.
 
 
 6
 On the other hand, both Reina's manager and Antonio's owner alleged that only good things were said about plaintiff during the reported conversation. Moreover, Reina's co-owner testified that his restaurant dismissed plaintiff because it was overstaffed. Antonio's owner said it did not dismiss plaintiff at all; rather, the owner claimed, plaintiff left voluntarily because he did not like his work hours, which were temporarily reduced because of a business slowdown. The district court need not have believed these latter accounts, however, not only because of plaintiff's statements to the contrary, but also because there is evidence in the record that Reina's restaurant was not overstaffed. Plaintiff testified that, at the time, business at Reina's was brisk and Reina's co-owner testified that Reina hired a replacement for the plaintiff soon after his discharge. Except in the most unusual case, questions of witness credibility are for the trial court, not this court. See, e.g., Anderson v. City of Bessemer City, 470 U.S. 564, 575 (1985); Dovydenas v. The Bible Speaks (In re The Bible Speaks), 869 F.2d 628, 630 (1st Cir.1989), cert. denied, 110 S.Ct. 67 (1989). Given the trial court's credibility determinations, its factual finding--that the defendants dismissed plaintiff for an impermissible reason--is not "clearly erroneous." Fed.R.Civ.P. 52(a).
 
 
 7
 Second, defendants point to the district court's statement that "[d]efendants have failed to come forth with valid non-discriminatory business reasons for having discharged plaintiff from his employment, for which reason they are both liable...." They say this is false and point out that they did come forth with legitimate reasons for discharging plaintiff, namely that Reina's was overstaffed, and that undesirable working hours led plaintiff to quit Antonio's. They then apparently refer to cases such as Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), that, in related contexts, hold that an employer need only produce evidence of a legitimate reason for a discharge after which a plaintiff bears the burden of persuading the finder of fact that those reasons were but a pretext, hiding an illegitimate motive. In other jurisdictions, the McDonnell framework has been held to apply in the FLSA context. See Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 876 (2d Cir.1988); Caryk v. Coupe, 663 F.Supp. 1243, 1254 (D.D.C.1987).
 
 
 8
 Our examination of the record convinces us, however, that the district court did not ignore the defendants' evidence nor did it come to its result as a result of any unlawful view about burdens of proof. The record makes clear that the court was fully aware of defendants' story; it simply accepted, instead, plaintiff's contrary account. The account of the phone conversation, the brisk business at Reina's, the hiring of a replacement, the involuntary nature of plaintiff's dismissal from Antonio's, once believed, adequately show that defendant's contrary account was pretextual. We read the district court's statement as if the word "valid" were underlined; that is to say, the district court was aware that defendants did "come forth with ... business reasons for having dismissed" the plaintiff, but the district court did not think those reasons were "valid," in that the court believed that they were not the true reasons for dismissal.
 
 
 9
 Third, the defendants claim that the district court, in calculating damages, should have used plaintiff's tax returns to determine the amount of income he would likely have earned had defendants not dismissed him. Those returns showed that Antonio's, in the past, on average had paid him about $134 per week. The plaintiff testified, however, that the returns were not accurate. He said that he had not reported tips; and, he added that the tips were generous, so that his total income came to $480 per week at Antonio's and $350 per week at Reina. The court relied on plaintiff's trial testimony rather than his tax returns. While it is obviously wrong not to report tips as income, this is not an income tax case. And, we are aware of no rule of law that prevents a judge from accepting the plaintiff's account of his actual, higher earnings, as true. Rule 1002 of the Federal Rules of Evidence, to which defendants draw our attention, does not prohibit a trial judge from considering oral testimony describing a certain event even if a written record of that event--such as a tax return--also exists. See 5 J. Weinstein & M. Berger, Weinstein's Evidence p 1002 at 1002-9 (1983).
 
 
 10
 Fourth, the defendants argue that the district court, when calculating damages, failed to take adequate account of plaintiff's actual earnings after Antonio's and Reina de Espana dismissed him. All parties agree with the court's basic damage-calculation idea, namely, 1) take the amount the plaintiff would have earned had he not been discharged, and 2) subtract the amount the plaintiff actually earned, between his dismissal and the trial date, working elsewhere. But, say defendants, the court calculated the first of these figures, on the basis of the plaintiff's own testimony, by adding to plaintiff's tax-return income a substantial amount reflecting tips. At the same time, they continue, the court calculated the second of these figures on the basis of plaintiff's tax returns alone: the court, in making this calculation, simply added up all the income plaintiff reported in his returns for 1986, 1987, and 1988, and divided by 36 months, to produce an average monthly income figure, which (after multiplying by the twenty-four post-discharge months) it took to be a fair estimate of the amount plaintiff really did earn working elsewhere between September 1987 and August 1989. The defendants emphasize that the 1986 return had nothing to do with the period in question; and they conclude that the court's calculation was faulty.
 
 
 11
 We concede that the court's use of plaintiff's discredited pre-discharge tax-return-reported income for purposes of calculating the plaintiff's post-discharge income is odd. But, we can find no legal error that worked to the disadvantage of the defendants. The plaintiff, in his request for damages, asserted that his post-discharge income amounted to $6300 ($300 for a week's work at Giordano's; $600 for two weeks at Capriccio, $2400 for two months at Casa Italia, and $3000 for an unspecified time at Gaby's). The defendants, in their opposition, simply said these numbers "should be much higher;" they did not present an alternative. The court, rejecting plaintiff's assertion, decided that plaintiff had earned, not $6300, but $10,176, during that time. The court's figure, however calculated, takes plaintiff's asserted wages and adds a considerable amount, perhaps to reflect tips. Indeed, its global amount is consistent with plaintiff's having earned his pre-discharge weekly wages (which the court assumed to be $415 per week) during approximately 24 weeks of work. (Plaintiff's submission, uncontradicted in this respect, seems to have assumed that he worked roughly that number of weeks during the subsequent two years.) Since the court did increase the claimed actual wages substantially, as defendants requested; since the defendants presented neither theory nor argument about how the court ought better to calculate the number; and since we can find no significant amount of evidence in the record that would support a higher number, we reject defendants argument.
 
 
 12
 The judgment of the district court is Affirmed.
 
 
 
 *
 Of the Second Circuit, sitting by designation