**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 98-41219
Summary Calendar

_____

RUSSELL SAMFORD; TERRY W. HOWARD;
WILLARD D. RAMEY,

                                        Plaintiffs-Appellants,

                        versus

THE STOLLE CORPORATION, d/b/a
ALCOA BUILDING PRODUCTS,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(4:96-CV-164, 4:96-CV-346 & 4:96-CV-375)

_____

May 17, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants Russell Samford, Terry Howard, and Willard Ramey appeal the district court's grant of summary judgment, dismissing their retaliatory discharge claims against Defendant-Appellant The Stolle Corporation, d/b/a Alcoa Building Products ("Stolle"). Concluding that Samford and Howard have not presented sufficient evidence to create a genuine issue of material fact whether Stolle's proffered non-discriminatory reason for discharging them was pretextual, we affirm the district court's

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

grant of summary judgment dismissing their claims. We conclude, however, that Ramey has presented sufficient evidence to challenge Stolle's proffered explanation, creating a genuine issue of material fact, and thus reverse and remand with regard to his claim against Stolle.

I.   Facts and Proceedings

Samford, Howard, and Ramey, who prior to their discharge each worked in the Maintenance Department of Stolle's Denison, Texas plant, claim that they were fired as a result of their participation in "protected activities" in violation of § 215 of the Fair Labor Standards Act ("FLSA") and § 21.055 of the Texas Labor Code. Specifically, they point to (1) a confidential letter they and four other Stolle employees sent to Stolle's parent company, ALCOA, in December 1993, asking the company to investigate a "series of situations" involving "sensitivity, inconsistences [sic], confidentiality, undermining supervisory integrity, partiality, intimidation, [and] attempted unfair trade practices"; and (2) their participation in a June 1994 Department of Labor ("DOL") investigation of an overtime compensation complaint made by another employee, Myron Grubowski, at the Denison plant.

Stolle discharged the Plaintiffs in November 1994. Stolle asserts that (1) it fired the Plaintiffs as part of a reorganization of the maintenance department designed to improve the technological and engineering skills of the department; (2) the process of reorganization began in August 1993, when Stolle determined that it would hire a degreed engineer to manage the

department, before the Plaintiffs were engaged in any allegedly protected conduct; and (3) it did not replace the Plaintiffs, who were all Maintenance Supervisors, but rather created a new Plant Engineer position, which it filled with an engineer with a college degree, eliminating all Maintenance Supervisor positions permanently.

## II. Analysis

### A. Standard of Review

We review de novo the district court's grant of summary judgment, applying the same standard as the district court.[2]

### B. Applicable Law

Retaliatory discharge claims under the FLSA and the Texas Labor Code are subject to the familiar burden-shifting framework of McDonnell Douglass v. Green.[3] Under this framework, a plaintiff establishes his prima facie case if he offers competent summary judgment evidence that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse action by his employer; and (3) there is a causal link between the protected activity and the

---

[2]Melton v. Teachers Ins. & Annuity Ass'n of America, 114 F.3d 557, 558-59 (5th Cir. 1997).

[3]411 U.S. 792, 802-04 (1973). See Brock v. Casey Truck Sales, Inc., 839 F.2d 872, 876 (2d Cir. 1988) (applying McDonnell Douglas framework to FLSA retaliation claim); Brock v. Richardson, 812 F.2d 121, 123 n. 1 (3d Cir. 1987) (same); James v. Medical Control, Inc., 29 F. Supp. 2d 749, 752 (N.D. Tex. 1998) (same); Adams v. Valley Fed. Credit Union, 848 S.W.2d 182, 186 (Tex. App. 1992) (applying McDonnell Douglas framework to claim under Texas Labor Code).

adverse action.[4]  Once the plaintiff has established his prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason explaining the adverse employment decision.[5]  If the defendant introduces evidence which, if true, would permit the conclusion that the adverse employment action was nondiscriminatory, the focus shifts to the ultimate question of whether the defendant unlawfully retaliated against the plaintiff, that is, whether the protected conduct was a "but for" cause of the adverse employment decision.[6]

The district court did not address whether the Plaintiffs had satisfied their initial burden of establishing their prima facie case, but rather held that they had failed to offer sufficient evidence to raise a genuine issue of material fact regarding Stolle's proffered nondiscriminatory reason for discharging them.[7] We agree with regard to Samford and Howard's claims; however, we conclude that Ramey has raised such a genuine issue of material fact.

C.   Merits

Stolle asserts that it fired the Plaintiffs as part of its

---

[4]See Mattern v. Eastman Kodak Co., 104 F.3d 702, 705 (5th Cir.), cert. denied, 118 S. Ct. 336 (1997) (Title VII case).

[5]Long v. Eastfield College, 88 F.3d 300, 304-05 (5th Cir. 1996).

[6]Id.

[7]See Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995) (affirming district court's holding that plaintiff had failed to provide sufficient evidence that defendant's articulated nondiscriminatory reason for firing plaintiff was pretext for sex or age discrimination).

**4**

restructuring of its maintenance department. Specifically, Stolle contends that it eliminated Samford, Howard, and Ramey's Maintenance Supervisor positions and replaced them with a single Plant Engineer position, which it filled with an engineer with a college degree.

Plaintiffs do not dispute that Stolle reorganized its maintenance department or that such a reorganization constitutes a legitimate, nondiscriminatory reason for discharging an employee.[8] Rather, they assert that the timing of their discharge, the favorable performance reviews they had received, and the alleged termination of other employees who engaged in the putatively protected activities, raise a genuine issue of material fact whether Stolle's nondiscriminatory reason for dismissing them was pretextual.[9] With one exception, which relates to Ramey only and which we address below, none of the evidence offered by the Plaintiffs supports the inference that Stolle's proffered reason for discharging them was a mere pretext.[10]

---

[8]See EEOC v. Texas Instruments, Inc., 100 F.3d 1173, 1181 (5th Cir. 1996) ("In the context of a reduction in force, which is itself a legitimate nondiscriminatory reason for discharge . . . .")

[9]In addition, Samford argues that he was not a Maintenance Supervisor, but a "Tool and Die Engineer," and thus Stolle's proffered nondiscriminatory reason does not apply to him. As the district court found, "the summary judgment evidence shows that, despite semantics, Samford was treated as and considered himself to be the maintenance supervisor for the tool and die operations at the plant."

[10]Seizing on a single sentence in the district court's order granting Stolle's summary judgment motion, the Plaintiffs additionally argue that the district court imposed the incorrect burden of proof on the Plaintiffs, requiring them to "prove" their

First, the Plaintiffs argue that their discharge followed the protected activity in which they engaged so closely in time as to justify an inference of retaliatory motive. Although the timing of a plaintiff's discharge is relevant to our inquiry, that factor alone in the absence of other relevant evidence of retaliatory motive is not sufficient to raise a genuine issue of material fact in this case.[11] Stolle fired the Plaintiffs 11 months after they sent the confidential letter to ALCOA's management and 5 months after they were interviewed in connection with Grubowski's overtime compensation complaint. The evidence, however, is undisputed that Stolle set in motion the wheels of its effort to reorganize the maintenance department in August 1993, several months before the Plaintiffs engaged in any allegedly protected conduct. Without more, the timing of their discharge does not cast doubt on Stolle's proffered reason for terminating the Plaintiffs' employment.

Second, the Plaintiffs argue that they were well qualified for their positions, as evidenced by the facts that they consistently received favorable performance reviews and that Stolle has failed to point to any specific deficiencies in the Plaintiffs' technical

---

case prior to trial. As the district court clearly indicated its order denying the Plaintiffs' motion to reconsider, the court applied the proper standard, requiring the Plaintiffs to show that there is a "conflict in substantial evidence" sufficient to create a genuine issue of material fact. See Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc).

[11]See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1092 (5th Cir. 1995) ("The timing of the adverse employment action can be significant, although not necessarily determinative, factor."); Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir. 1992) (same).

or engineering abilities. Even setting aside the Plaintiffs' questionable characterization of the evidence, they do not dispute that Stolle began its restructuring effort before they engaged in any protected activity or that Stolle never hired individual replacements for dismissed Maintenance Supervisors. Neither do they contend that their technological and engineering capabilities were on par with the Plant Engineer Stolle did hire. In short, the Plaintiffs' assertion that they were qualified to do the jobs that they had been doing prior to the reorganization simply does not rebut Stolle's explanation that it was restructuring the maintenance department to emphasize skills the Plaintiffs do not possess.[12]

Third, the Plaintiffs assert that the facts that Myron Grubowski was fired the day after he met with the DOL representative who was investigating his overtime compensation complaint and that "each employee who complained and gave a statement to the United States Department of Labor was quickly discharged" support an inference that the Plaintiffs were fired in retaliation for their participation in the DOL investigation. In addition, the Plaintiffs point to an August 1994 hand-written memorandum from Bobby Thomas, Plaintiffs' immediate supervisor, to Gale Powell, Stolle's Human Resources Manager, stating that he (Thomas) had learned that Ramey had told another employee that, if

---

[12]Cf. Texas Instruments, 100 F.3d at 1181 ("In the context of a reduction in force, which is itself a legitimate nondiscriminatory reason for discharge, the fact that an employee is qualified for his job is less relevant — some employees may have to be let go despite competent performance.").

Grubowski sued the company, he (Ramey) would testify on Grubowski's behalf.

Plaintiffs' reliance on Mr. Grubowski's discharge in and of itself is misplaced. Grubowski's claim is not before us and, without more, the fact that Stolle impermissibly fired another employee, which we will assume to be true for purposes of summary judgment,[13] does not bear on the Plaintiffs claims. The "more" to which the Plaintiffs point, without citation to the record, is their assertion that all of the employees who met with the DOL regarding Grubowski's claim were fired. The Plaintiffs relatedly argue that all but two of the Stolle employees who signed the December 1993 letter to ALCOA were fired.

The record does not support the Plaintiffs' assertions. To the contrary, as the district judge noted, at least one employee, Ray Hobbs, who met with the DOL representative was not terminated. Moreover, consistent with Stolle's proffered explanation, Hobbs is an electronics technician in the Maintenance Department, not a Maintenance Supervisor and thus not similarly situated. Likewise, the two employees who signed the letter to ALCOA but were not terminated are not Maintenance Supervisors. The Plaintiffs, in fact, provide no evidence that any employee who met with the DOL representative or signed the December 1993 letter and who was not a Maintenance Supervisor was fired. Indeed, the only evidence they offer that Stolle might have been aware that any of the Plaintiffs

_____

[13]The DOL representative who investigated Grubowski's claim concluded that "his termination was effected by his contact with the Department of Labor."

met with the DOL representative was the observation that the DOL representative interviewed Samford at the Denison plant.[14]  In sum, the Plaintiffs' unsupported allegations regarding those who participated in DOL's investigation of Grubowski's overtime compensation complaint simply do not buttress their claim that they were fired in retaliation for their participation in the DOL investigation.

The memorandum from Thomas to Powell, however, is another matter.  Thomas was Ramey's direct supervisor.  According to his own affidavit, he was the person who recommended that Stolle eliminate the Maintenance Supervisor position in favor of a Project Engineer.  Moreover, he made this recommendation in "approximately August 1994," the same month in which he wrote to the Human Resources Manager that Ramey had stated that he would testify against Stolle if Grubowski sued the company.  In short, this letter is the one piece of evidence that closely links the termination of one of the Plaintiffs and his allegedly protected activity.  It is sufficient to raise a genuine issue of material fact whether Stolle fired Ramey because he had engaged in allegedly protected activities.  Accordingly, Ramey's claim against Stolle survives summary judgment.

IV. <u>Conclusion</u>

For the foregoing reasons, we affirm the district court's grant of summary judgment with regard to Samford and Howard's

_____

[14]The DOL representative interviewed Howard and Ramey at their homes by telephone.

claims; and reverse and remand for proceedings consistent with this opinion with regard to Ramey's claim.

AFFIRMED in part; REVERSED and REMANDED in part.